Kelly E. HINKLE, Appellant,

v.

NIEHAUS LUMBER COMPANY, Appellee.

No. 63S04–8807–CV–637.

Supreme Court of Indiana.

July 18, 1988.

Bruce A. Smith, Washington, for appellant.

Stephen Hensleigh Thomas, Statham McCray Thomas & Krohn, Evansville, for appellee.

James R. Fisher, Robert B. Clemens, Ice Miller Donadio & Ryan, Indianapolis, amici curiae, for Indiana Retail Council, Inc., Indiana Lumber & Builders Supply Ass'n, and Ins. Institute of Indiana.

## ON CIVIL PETITION TO TRANSFER

DICKSON, Justice.

Defendant-appellee Niehaus Lumber Company (Niehaus) obtained a summary judgment in a products liability case brought by plaintiff-appellant Kelly E. Hinkle (Hinkle). The Court of Appeals reversed, finding that Niehaus failed to carry its burden at summary judgment to show an absence of evidence upon the factual question of whether Niehaus had a duty to warn. *Hinkle v. Niehaus Lumber Co.* (1987), Ind.App., 510 N.E.2d 198. We grant transfer and affirm the trial court.

As summarized by the Court of Appeals, the underlying facts are as follows. In 1984, Alumax Aluminum Recycling (Alumax) needed to replace the roof over a "dross"[1] storage shed where corrosive salt compounds were stored. A roofing contractor submitted a bid for the roofing job based upon the cost of labor and fiberglass roofing materials. Fiberglass does not corrode.

However, Alumax's plant manager wanted to do the job as cheaply as possible. Determining a fiberglass roof would be too costly, he rejected the contractor's original bid and asked him to rebid the job as to labor only. When the contractor did so, the plant manager accepted the labor bid, then ordered 28 gauge sheet metal roofing material directly from Niehaus. Before that order was placed, Alumax's maintenance supervisor told the plant manager sheet metal would be more costly in the

long run because it would deteriorate faster.

The roofing contractor's workmen installed this sheet metal roofing over the dross storage area. A heavier gauge metal would have been more suitable for the job. The roofing material purchased from Niehaus contained no written warnings or installation instructions of any kind.

As installed, the metal sheets on the roof overlapped approximately 18 inches at every other purlin.[2] While it was thought this overlap would add extra strength, in fact it caused more serious corrosion and deterioration.

*Six* months later, Hinkle, an employee of Alumax, was ordered to make repairs on the metal roof over the dross shed. When Hinkle walked on the roof to do his job, the roof collapsed because of excessive corrosion in one of the purlin areas. Hinkle was severely injured.

Indiana's Product Liability Act imposes strict liability in tort upon sellers of a product in a defective condition unreasonably dangerous to any user or consumer. Ind. Code § 33–1–1.5–3. The definition of product in a defective condition is provided by Ind.Code § 33–1–1.5–2.5:

(a) A product is in a defective condition under this chapter if, at the time it is conveyed by the seller to another party, it is in a condition:

(1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and

(2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption.

(b) A product is defective under this chapter if the seller fails to:

(1) properly package or label the product to give reasonable warnings of danger about the product; or

**1.** "Dross" is defined as (1) "the scum that forms on the surface of molten metal;" (2) "waste or foreign matter: IMPURITY." Webster's New Collegiate Dictionary 347 (1980).

**2.** "Purlin" is defined as "a horizontal member in a roof supporting the rafters." Webster's New Collegiate Dictionary, *supra,* 930.

(2) give reasonably complete instructions on proper use of the product; when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer.

(c) A product is not defective under this chapter if it is safe for reasonably expectable handling and consumption. *If an injury results from handling, preparation for use, or consumption that is not reasonably expectable, the seller is not liable under this chapter.*

(d) A product is not defective under this chapter if the product is incapable of being made safe for its reasonably expectable use, when manufactured, sold, handled, and packaged properly. [emphasis added]

 Identifying the "threshold question" as "whether a duty to warn arose," the Court of Appeals concluded that Niehaus had a duty to warn because certain claimed unreasonable dangers were unknown to the purchaser Alumax. However, the extent of a purchaser's knowledge is not the sole criteria giving rise to a duty to warn. There must be evidence that the supplier knew or had reason to know that the product was likely to be dangerous when used in a foreseeable manner. *American Optical Co. v. Weidenhamer* (1983), Ind., 457 N.E.2d 181. Where injury results from use not reasonably expectable, the product is not defective under Ind.Code § 33–1–1.5–2.5(c), and the seller is not liable.

 Hinkle claims that his fall was caused by the excessive metal roof corrosion and deterioration which resulted from the corrosive nature of the salts and chemicals used in the Alumax recycling process. Although the record contained purchase documents merely noting that the sheets were intended for roofing "over dross area," Hinkle presented no evidence to show that Niehaus knew or should have had any reasonable expectation that the metal roofing sheets were to be used in an unusually corrosive environment. The roofing contractor employed by Alumax testified by deposition that the sheet metal roofing material would support a man's weight under normal use. The deposition of the Alumax maintenance superintendant describes the extent of knowledge and expectations by Niehaus as follows:

Q. To your knowledge was Niehaus Lumber Company involved in the decision by Alumax to put on the particular type of roof that Mr. Hinkle fell through?

A. Niehaus Lumber Company was not involved in any decisions ... when the roofing was selected, we were told ... [by other Alumax personnel] what to order. And that's what we ordered.

Q. And to your knowledge, did Niehaus even know for sure what building this was going to go on?

A. I don't see how they could have, because we weren't dealing with Niehaus as a subcontractor or anything else. All we asked them for was to supply this material, just as if I was buying a bolt or a nut. "I want this type of bolt." "I want this type of nut." And that's it. And that's all Niehaus really did. They had no decision at all into where this material was going, what it was going to be used for, anything else. As far as they know [sic], we could have been roofing a barn.

Q. And did Niehaus deliver what was ordered by Alumax?

A. Yes.

Trial Rule 56(E) includes the following explicit requirement:

... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him....

A party opposing summary judgment is "obliged to disgorge sufficient evidence" to

show the existence of a genuine triable issue. *Shideler v. Dwyer* (1981), 275 Ind. 270, 417 N.E.2d 281; *Pan American World Airways, Inc. v. Local Readers Service, Inc.* (1968), 143 Ind.App. 370, 240 N.E. 2d 552. The party opposing summary judgment must "come forth with specific facts showing that there is a genuine issue for trial." *Criss v. Bitzegaio* (1981), Ind., 420 N.E.2d 1221; *Whipple v. Dickey* (1980), Ind.App., 401 N.E.2d 787.

We find no evidence in the record that the roofing sheets were unreasonably dangerous when used in "reasonably expectable handling and consumption." Ind.Code § 33–1–1.5–2.5(c). The trial court was correct in granting summary judgment.

Hinkle also contends that the trial court erred in failing to state the facts, issues or findings on which its judgment was based.

Trial Rule 56(C) requires the trial court to "designate the issues or claims upon which it finds no genuine issue as to any material facts." However, as appellant concedes, the failure to make specific findings in regard to summary judgment will not necessarily mandate reversal if the reasons for the summary judgment are apparent in the record. *Shortridge v. Platis* (1984), Ind.App., 458 N.E.2d 301. We find that the basis for summary judgment, as discussed above, is apparent in the record, and decline to reverse on this ground.

The trial court's grant of summary judgment is affirmed.

SHEPARD, C.J., and DeBRULER, J., concur.

GIVAN, J., concurs in result with opinion in which PIVARNIK, J., concurs.

GIVAN, Justice, concurring in result.

I concur in the result of the majority opinion in this case. I cannot, however, agree with the majority statement:

"Indiana's Product Liability Act imposes strict liability in tort upon sellers of a product in a defective condition unreasonably dangerous to any user or consumer."

Although Ind.Code § 33–1–1.5–3 states, in part:

"Codification and Restatement of Strict Liability in Tort. The common law of this state with respect to strict liability in tort is codified and restated as follows: ...."

The use of the term "strict liability" in this statute is a misnomer and a corruption of the term, for what follows in the statute is actually a legislative statement of what constitutes liability under certain acts of negligence. This corruption of legal terminology has for some unknown reason become widespread throughout the case law and treatises concerning products liability.

This anomaly was properly characterized by the United States Court of Appeals in *LaRossa v. Scientific Design Co.* (3d Cir. 1968), 402 F.2d 937, 29 A.L.R.3d 1416 (1970). Although the court observed:

"In recent years the New Jersey cases have held the manufacturer liable, either under implied warranty or strict liability in tort, for direct property loss, as well as personal injury...." *Id.* at 941, 29 A.L.R.3d at 1421.

The Court went on to say:

"In all the cases decided by the New Jersey courts there existed a defect in the product which caused the injury to the ultimate consumer. Even when described as strict liability in tort the underlying principle has been analogized to the sale of goods." *Id.* at 941, 29 A.L.R. 3d at 1421.

I see nothing in the Indiana statute which actually imposes strict liability. In all instances, both under the case law and the statutory law of this state, some act of negligence is required to impose liability. The result in this case does not transcend that principle.

I therefore concur in the result.

PIVARNIK, J., concurs.