Otto L. UNDERLY, Appellant–Plaintiff,

v.

ADVANCE MACHINE COMPANY,
Appellee–Defendant.

No. 20A04–9103–CV–88.

Court of Appeals of Indiana,
Fourth District.

Jan. 19, 1993.

Robert F. Gonderman, Jr., Robert F. Gonderman, Sr., Gonderman Law Offices, South Bend, for appellant-plaintiff.

Robert J. Palmer, Arthur A. May, Wendell W. Walsh, May, Oberfell & Lorber, South Bend, for appellee-defendant.

MILLER, Judge.

Otto Underly sustained permanent injuries to his hand when he attempted to confirm the source of a hydraulic oil leak in a "retriever" (a parking lot sweeper) manufactured by Advance Machine Company (Advance). Underly placed the middle finger of his right hand over a worn spot in the suspected hose—which had a pressure level of 1,000 p.s.i., powerful enough to easily puncture the human body—and then had a co-worker pressurize the line, causing hydraulic oil to be injected into Underly's finger.[1] Underly brought an action for strict product liability against Advance, claiming that Advance failed to provide warnings regarding the dangers of working on hydraulic lines and, therefore, the retriever was unreasonably dangerous. The jury disagreed:

Underly claims: (1) the trial court erred in not granting his motion for judgment on the evidence on the issue of misuse; (2) the jury was improperly instructed on the defense of foreseeable misuse and Advance's duty to warn; and (3) the trial court erred by admitting into evidence a videotape put together by Advance, which showed hydraulic oil coming out of a hole in a hose at various pressure levels.[2]

We affirm.

FACTS

Underly was the shift leader of the University Park Mall maintenance crew. On July 9, 1984, David Young, one of the employees under Underly's supervision, was using the retriever to sweep the mall parking lot. Young noticed a pool of fluid accumulating underneath the retriever, and shortly thereafter, the retriever's broom (which swept up debris) stopped operating. Young reported the problem to Underly who proceeded to inspect the retriever for the source of the problem. Deducing that the pool of fluid was hydraulic oil, Underly added more hydraulic fluid into the reservoir and took the retriever into the maintenance bay for a more thorough inspection.

Once in the maintenance area, Underly continued in his attempt to locate the source of the leak. With the retriever turned off, Underly removed the exterior and interior steel panels in order to access the hydraulic hoses. Underly next ran his hand along the hoses to detect any worn spots. Finding what he believed to be the source of the leak, Underly, with his finger over the hole, instructed one of his underlings to turn on the retriever's engine. Nothing happened. Next, Underly, with his finger still over the hole, told his co-worker to pressurize the hydraulic line. Immediately, high-pressure hydraulic oil was injected into Underly's hand, causing him permanent injuries.

On May 16, 1985, Underly brought suit in the Elkhart Circuit Court against the maker of the retriever, Advance,[3] pursuant to the Indiana Products Liability Act, Ind. Code 33–1–1.5 et seq. Underly contended

---

1. Underly sustained permanent impairment to his right hand and arm, and underwent seven (7) surgical procedures including a finger amputation.

2. Underly also challenges the trial court's decision to grant Advance's motion for judgment on the evidence as to the issue of punitive damages. However, because we affirm the jury's verdict in favor of Advance, this issue is moot. *See, Grimes v. Jones* (1991) Ind.App., 567 N.E.2d 858,

859, *trans. denied* (punitive damages may not be awarded in the absence of either compensatory damages or affirmative equitable relief.).

3. In his original action, Underly had also named as a defendant Hull Lift Truck, Inc., claiming that Hull's negligent maintenance of the retriever caused Underly's injuries. Hull was dismissed from the original action by summary judgment on March 16, 1988.

that because Advance failed to post warnings on its retriever concerning the risk of injuries from hydraulic oil leaks, and because Advance encouraged users to make light repairs, such as replacing hydraulic hose, the retriever was in a defective and unreasonably dangerous condition. The case was tried before a jury in December of 1988. At the end of a week long trial, the jury returned a verdict in favor of Advance. Due to juror misconduct, however, the trial court granted Underly's motion for mistrial and set the cause for a new trial.

At the end of the second trial in February of 1991, Underly moved for a judgment on the evidence on Advance's defense of misuse. This motion was denied. The second jury returned a verdict in favor of Advance.

### DECISION

#### ISSUE I. JUDGMENT ON THE EVIDENCE

▮▮▮ Underly contends the trial court erred by not granting his motion for judgment on the evidence with respect to Advance's affirmative defense of misuse. When reviewing the denial of a motion for judgment on the evidence, we are bound by the same standards which govern the trial court. *Kroger Co. Sav–On Store v. Presnell* (1987), Ind.App., 515 N.E.2d 538, 543, *trans. denied.* When the trial court considers a motion for judgment on the evidence, it must view the evidence in a light most favorable to the non-moving party. *Id.* If there is any probative evidence or reasonable inferences to be drawn from the evidence sufficient to support the non-movant's claim, or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*

▮▮▮ In Indiana, actions for strict liability in tort against sellers and manufacturers of defective products are governed by Indiana's Product Liability Act, I.C. 33–1–1.5–1 *et seq.* In order to maintain a suc-

cessful action under the Act, a plaintiff must show: (1) the seller; (2) put into the stream of commerce; (3) a product in a defective condition unreasonably dangerous; (4) that was the proximate cause of the plaintiff's injuries. I.C. 33–1–1.5–3(a). According to the Act, a product is "defective" if it is in a condition:

(1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and

(2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption.

I.C. 33–1–1.5–2.5(a)(1). A product is also "defective" if the seller fails to:

(1) properly package or label the product to give reasonable warnings of danger about the product; or

(2) give reasonably complete instructions on proper use of the product; when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer.

I.C. 33–1–1.5–2.5(b).

▮▮▮ Misuse is a defense which will completely bar recovery. Under the Act, misuse occurs where "a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party." I.C. 33–1–1.5–4(b)(2). Thus, the key to a successful claim of misuse is whether the seller can prove that the misuse, from the seller's perspective, was not reasonably foreseeable.[4] *Hoffman v. E.W. Bliss, Co.* (1983), Ind., 448 N.E.2d 277, 283; *Montgomery Ward & Co. v. Gregg* (1990), Ind.App., 554 N.E.2d 1145, 1156, *trans. denied.* The foreseeability of an intervening misuse is usually a question for the jury. *Montgomery Ward, supra,* at 1156.

▮▮▮ Viewing the evidence in the light most favorable to Advance, we conclude

**4.** In his brief, counsel for Underly misstates the appropriate test for foreseeability as it applies to the defense of misuse. For a complete discussion of this error, see slip opinion, *infra* at 17–19.

the trial court did not err in denying Underly's motion. At trial, Advance's Vice–President William Charles Sletten (Sletten) testified as to the condition of the retriever. Sletten stated that Advance could foresee that users of its retriever would conduct light repairs, such as replacing a hydraulic hose. He also testified it was foreseeable that persons, such as Underly, may run their hands along the hose while the retriever was turned off in order to discover any worn spots or leaks. However, in Sletten's opinion, it was not only unforeseeable, but inconceivable that someone would find a worn spot in the hydraulic hose and then, with their finger remaining on the hose, pressurize the line. Finally, Sletten testified that, apart from Underly's injury, Advance had never experienced anyone else injuring themselves in the same manner. Thus, these facts demonstrate that there was sufficient evidence on Advance's defense of misuse to submit the issue to the jury.

Underly spends a large portion of his brief (and this court's time) presenting facts in his favor which he claims entitle him to a different result. Underly maintains this is so because such "facts" are undisputed. However, our standard of review of a denial of a judgment on the evidence does not depend on whether or not the facts are undisputed; we only look to those facts—disputed or undisputed—most favorable to the *non-moving* party, in this case Advance. Underly's distinction between "disputed facts" versus "undisputed facts" is nothing more than a thinly-veiled invitation for this Court to engage in reweighing the evidence—which we will not do. The trial court did not err.

ISSUE II. WAS THE JURY FAIRLY INSTRUCTED?

▮ Underly raises several objections concerning various jury instructions given by the trial court, and jury instructions tendered by Underly which were refused by the trial court. The giving of jury instructions is a matter primarily entrusted to the discretion of the trial court. *Wielgus v. Lopez* (1988), Ind.App., 525 N.E.2d 1272, 1274. We will not disturb the trial court's decision except for an abuse of that discretion. *Weller v. Mack Trucks, Inc.* (1991), Ind.App., 570 N.E.2d 1341, 1343.

*A. Instructions on Misuse*

Underly raises several objections regarding the trial court's final instruction 21, which addressed the defense of misuse. The relevant portion of the trial court's instruction reads:

At the time of the occurrence being considered, there was in full force and effect in the state of Indiana a statute that provides as follows:

(a) The defenses in this portion of the statute are defenses to actions in strict liability in tort. The burden of proof of any defense raised in a product liability action is on the party raising the defense.

(b) With respect to any product liability action based on strict liability in tort: It is a defense that a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party.

R. at 872. At trial, Underly objected to this instruction, claiming the instruction in its present form was incomplete:

[I]t's incomplete because under the misuse case of Hoffman versus Bliss, the part of misuse is that a manufacturer fails to warn about a latent danger and failure to warn about the latent danger and a failure to warn proximately caused the plaintiff to use or handle the machine in a certain manner then the manufacturer may not avoid liability for the injury of the defensive [sic] misuse. That proposition of law is missing in the instruction. It was in our 16. I understood last night it was going to be given after the discussion. I may be mistaken. But that's a proposition to be explained, misuse, to the jury. I don't have the proper language ... it's not complete to the offense.

R. at 1810–11.

Underly had tendered his own instructions on misuse, Plaintiff's Instructions 6 and 16, which were apparently refused by

the trial court. Underly's tendered instruction 6 read in pertinent part: "The failure of the plaintiff to discover a defect in a product, or failing to guard against the existence of a defect is not misuse of the product." Supp. R.[5] Underly's instruction 16 read:

If a manufacturer fails to warn about a latent danger, and the failure to warn about the latent danger proximately causes the plaintiff to use or handle the machine in certain manner, then the manufacturer may not avoid liability for the injury under the defense of misuse.

Likewise, if a manufacturer fails to warn about a latent danger, and the failure to warn about the latent danger proximately causes the plaintiff to use or handle the machine in a certain manner, then the manufacturer may not avoid liability by claiming that the use, which was induced by its failure to warn, was not reasonably expectable.

R. at 671.

Later, Underly renewed his objection to the trial court's final instruction on the grounds that it was unsupported by any evidence:

MR. GONDERMAN JR: I want to make sure I've done one thing before we get into this other issue. And I probably have. It's probably redundant. When we objected to misuse today as being incomplete, the Court's instruction on misuse, we still renew our objection to any instruction in this pattern because we don't believe there is any evidence to support it.

R. at 1828. Thus, Underly maintains (1) the trial court's instruction was not supported by the evidence; and (2) it was an incomplete statement of law. We address each of these in turn.

■ First, we find that there was sufficient evidence to support the trial court's instruction. In reviewing a claim that evidence was insufficient to support the giving of an instruction, the appellate court may look only to that evidence most favorable to appellee and any reasonable inferences to be drawn therefrom. If there is any evidence to support the instruction, it was properly given. *Antcliff v. Datzman* (1982), Ind.App., 436 N.E.2d 114, 122 (citing *Dominguez v. Gallmeyer* (1980), Ind.App., 402 N.E.2d 1295). Given that this standard of review is virtually identical to that applied in *ISSUE I, supra,* we incorporate our review of the facts from that portion of our opinion and hold that there was sufficient evidence to support the trial court's instruction.

■ Second, Underly claims the trial court's instruction was legally incomplete; this supplements his claim that the trial court erred by not giving his tendered instructions 6 and 16. A party is normally entitled to have a tendered instruction read to the jury, and we will reverse the trial court for failure to give a tendered instruction if: (1) the instruction is a correct statement of law; (2) it is supported by the evidence; (3) it does not repeat material adequately covered by other instructions; and (4) the substantial rights of the tendering party would be prejudiced by the failure to give the instruction. *Miller Brewing Co. v. Best Beers of Bloomington, Inc.* (1991), Ind.App., 579 N.E.2d 626, 635. However, a party is not entitled to a repetitive instruction, or one that does not correctly state the law. *Id.* We will not reverse the trial court for failing to give the best possible instructions; we will affirm as long as the trial court gave instructions which adequately and correctly stated the law. *Id.*

■ Applying this standard, we find that Underly was not entitled to either instruction. The trial court's final instruction was a verbatim recitation of the Indiana Product Liability Act's definition of misuse. This instruction clearly stated that the only misuse which can constitute an affirmative defense in a products liability action is one that was unforeseeable to the seller at the time of sale. By focusing upon the foreseeability of the misuse from the *seller's* perspective, the trial court's

---

5. We cannot provide page citations to any of the supplemental record because Underly's counsel, in addition to not providing the requisite notations in the transcript pursuant to Ind.App.Rule 7.2(A)(3)(a), also failed to number any pages in the supplemental record.

final instruction foreclosed the possibility of any inquiry into the *user's* ability to discover or foresee the risks. Underly's Instruction No. 6—which stated that the plaintiff's failure to discover or guard against a defect is not misuse—may have made this point clearer; but it stated no principle of law not already covered by the trial court's instruction. Therefore, this instruction was unnecessary and repetitive and the trial court did not err in refusing to give it.

▆ In addition, Underly's Tendered Instruction No. 16 is an incorrect statement of law. The instruction stated that a manufacturer or seller always has a duty to warn about latent dangers, irrespective of whether the plaintiff's use was reasonably foreseeable. However, a seller has a duty to warn only when the seller knew or had reason to know that the product was likely to be dangerous when used in a foreseeable manner. *Hinkle v. Niehaus Lumber Co.* (1988), Ind., 525 N.E.2d 1243, 1245; *see, also,* I.C. 33–1–1.5–2.5(c) ("if an injury results from the handling, preparation for use, or consumption *that is not reasonably expectable,* the seller is not liable."). Thus, Underly's tendered instruction was an incorrect statement of the law and the trial court was correct in not incorporating it into its instruction on misuse.

### B. Instructions on Advance's Duty to Warn

▆ Underly vigorously argues that the trial court's instruction no. 17, regarding Advance's duty to warn, is reversible error because it is an incorrect statement of law. As a general rule, we will consider instructions as a whole. *Peavler v. Board of Com'rs of Monroe Co.* (1986), Ind.App., 492 N.E.2d 1086, 1088, *rev'd on other grounds, Peavler v. Monroe Cty. Bd. of Com'rs* (1988), Ind., 528 N.E.2d 40. However, when an instruction misstates the law, it is presumed that the erroneous instruction has influenced the result at trial unless the evidence demonstrates that the verdict, un-

der a proper instruction, could not have been different. *Canfield v. Sandock* (1990), Ind., 563 N.E.2d 1279, 1282; *Peavler, supra.*

The disputed section of instruction no. 17 states:

> A duty to warn arises when the manufacturer knows or should know of a danger involved in the use of its product, or where it is unreasonably dangerous to place the product in the hands of the user without suitable warning. However, where the danger or potentiality of danger is known *or should be known to the user,* the duty does not attach.

R. at 868 (emphasis added). At trial, Underly objected to the trial court's instruction as follows:

> [T]he Court indicates that the—where the danger or potentiality of danger is known or should be known to the user, the duty does not attach. That should have been known—in fact, that's the objective thing of open and obvious. Unless there is actual knowledge that the person knew of the danger, then the duty to warrant [sic] attaches so it's not a complete statement of law post modification of Koske.
>
> ... And I think the "should have been known" part to the user, that has to come out now under Koske. That's a very strong problem. And finally he says there's no evidence to support it. I stipulated that he did not know.

R. at 1805–06. On appeal, Underly argues that by including the phrase "should have known," the trial court's instruction was tantamount to telling the jury that contributory negligence was a defense in actions based on strict product liability. Underly maintains that because of this misstatement of law, the trial court committed reversible error.[6] While we agree that this phrase is problematic, its effect was harmless.

▆ The trial court's duty to warn instruction was taken directly from this

6. Underly raises a second objection to the phrase "should have known," claiming that it was not supported by sufficient evidence. However, we refuse to dissect every grammatical component of an instruction away from the

whole, and then subject the divorced components to a sufficiency analysis; instead, we will see if the legal theory as set out in the whole instruction is supported by the evidence. *Cf. Lewis by Lewis v. Bonahoom* (1991), Ind.App.,

court's decision in *Craven v. Niagara Machine and Tool Works, Inc.* (1981), Ind. App., 417 N.E.2d 1165, 1169. Since *Craven,* however, our supreme court has rendered two decisions in cases involving products liability which lead us to believe that the test in *Craven* is no longer the law. In *Hinkle,* our supreme court streamlined the test in Craven (although not citing that case) by stating that a seller does not have a duty to warn unless "there is evidence that the *supplier* knew or had reason to know that the product was likely to be dangerous when used in a foreseeable manner." *Id.* at 1245. Thus, in *Hinkle,* the supreme court emphasized that the inquiry is to the *seller's* ability to predict dangers attendant to foreseeable uses of the product, and not the *user's* ability to foresee such dangers. Two years later, our supreme court in *Koske v. Townsend Engineering Co.* (1990), Ind. 551 N.E.2d 437, expressly stated that to "[r]esort to an objective standard to determine what a product user should have seen and known about a product danger is further inappropriate because such [an inquiry] is akin to the contributory negligence defense, which would otherwise not be available in strict liability in tort." *Id.* at 441. Thus, to the extent that our decision in *Craven* held that a manufacturer had no duty to warn of dangers which *should have been known* to the user, that portion of our opinion has been overruled by *Koske.* Therefore, we must agree with Underly that the trial court's instruction contained an erroneous statement of law.

Even so, our review of the evidence at trial leads us to conclude that such error was harmless. In order to prevail on his claim for strict liability based upon Advance's failure to warn, it was incumbent upon Underly not only to present evidence to the jury that ordinary users of the retriever would be unaware of the danger of working around high pressure hydraulic hoses, but also to show that Advance knew

583 N.E.2d 175, 177 ("For refusal of instruction to constitute error, there must be some evidence in the record to support the theory set out in the [entire] instruction.").

or had reason to know that its retriever was fraught with such dangers when used in a foreseeable manner. This Underly did not do.

The bulk of Underly's evidence consisted merely of testimony from Sletten and Underly's expert witness, Raymond Black (Black), concerning the general knowledge possessed by hydraulics engineers that there existed a potential danger of injection injuries when working around hydraulic lines due to people looking for leaks with their hands. Beyond this general knowledge, however, Underly presented no evidence to the jury showing that Advance should have anticipated that looking for leaks in a pressurized hydraulic hoses with one's hand was a foreseeable use. Both Black and Sletten testified that, prior to Underly's accident, neither had ever heard of such an injury occurring in connection with an Advance retriever or, for that manner, any other machinery using hydraulics. In fact, the only evidence Underly presented to show that this was a foreseeable use was a statement by Black simply that, based on his general knowledge from working in hydraulics, it was foreseeable. However, evidence about general knowledge by itself is not sufficient to prove that a specific manufacturer should foresee that a particular use of its product was surrounded by such danger that there arises a duty to warn. Thus, from our review of the record, we conclude that Underly simply failed to prove this critical element of his case by a preponderance of the evidence. From this, we can reliably conclude that the jury did not base its decision upon considerations of Underly's conduct. Therefore, even with a proper instruction, the jury's verdict would not have been different.[7]

### C. Instructions on Foreseeability

Underly claims the trial court erred by not including in its instruction a portion of Underly's Tendered Instruction No. 6 which stated:

7. Our review of the record shows that Underly was the only party who attempted to introduce contributory negligence into this case. The following excerpts from the transcript illustrate Underly's preoccupation with contributory neg-

[L]iability does not depend on whether the defendant could have predicted injury would have happened to the plaintiff in exactly the way it did or the statistical likelihood of the particular circumstances which befell the plaintiff.

Supp. R. This instruction was tendered to supplement the trial court's final instruction no. 13 on foreseeability which provided:

The determination of what is reasonably expectable is not judged by the subjective opinions of those involved, but is based upon the standard of due care in avoiding a result which might reasonably have been anticipated in the ordinary experience of men. If the defendant's conduct is a substantial factor in bringing about harm to another, the fact that the defendant neither foresaw nor should have foreseen the extent of harm or the manner in which it occurred does not preclude liability.

R. at 860.

■■ Underly claims that by refusing to give his tendered instruction, the trial

ligence—and the great lengths the trial court went to keep this from influencing the jury:

**Mr. Gonderman, Jr.:**—I'd like to object on relevancy as to what this is going to, what issues he thinks this goes to? It sounds like contributory negligence to me.
**The Court:** I see where it's going, I suspect.
**Mr. Gonderman, Jr.:** Pardon?
**The Court:** He's going into Mr. Underly's general knowledge of this machine and how it worked which you went into and I think he's got a right to go into, so I'll let him proceed.
**Mr. Gonderman, Jr.:** We'd—I'd request an instruction, then, it's not relevant to any negligence of the plaintiff, if any, because that's not a defense in this case.
**The Court:** I don't see it going there. If anybody raises that or that's made an argument, I'll give you an instruction. Go ahead, Mr. May.

R. at 1610–11.

\* \* \* \* \* \*

**Mr. Gonderman, Jr.:** What does it go to anyway?
**The Court:** Well,—
**Mr. Gonderman, Jr.:** It can only be confused with contributory negligence.
**The Court:** Well, I don't agree with that, Robbie.
**Mr. Gonderman, Jr.:** And it's outside the scope of the direct examination. Could you tell me, Judge, what you think it's relevant to?
**The Court:** Well, you went into and you have—you went into what he'd done with this machine, how he used this machine and everything else. I think he's got just as much right to explore deeper what he's had to do with this machine.
**Mr. Gonderman, Jr.:** Well, we'd like an instruction on that.
**Mr. May:** Oh!
**The Court:** No. I'm not—you know, you keep saying it goes to contrib. It doesn't go to contrib. Contrib's not a defense in this case.
**Mr. Gonderman, Jr.:** Don't you think the jury could be confused by that?
**The Court:** How are they going to get confused about something they're never going to get told about?

R. at 1626–27.

\* \* \* \* \* \*

**Mr. May:** Your honor, just a moment. This is beyond the scope of cross examination.
**Mr. Gonderman, Jr.:** It goes to his knowledge, what he did, why he did, suggesting contributory negligence.
**The Court:** That's a word I really don't want to hear anymore.

R. at 1657.

**Mr. Gonderman, Jr.:** Now, Judge, our objection on foreseeability now is that this is not relevant as to what Mr. Underly could see for contributory negligence 'cause it's stipulated that he didn't know—
**The Court:** Contrib. isn't an issue.
**Mr. Gonderman, Jr.:** The only issue is what was foreseeable to the Advance Machine Company, and since it was foreseeable to the company that the hole could have been so small that it could not have been visible if it was in bright open air, that showing the exact same hole that makes it very visible misleads the jury materially on foreseeability because now we look at this hose and we say, "Wow, that's easy to see." But what they knew that what is foreseeable is that the hole could be so small he could be running his hand along it and it was invisible at all times, and—and there's no way in the world—this—this is going to totally mislead the jury on foreseeability. The only way the exact hole size is relevant is if we're getting to contrib. which you've already said is not an issue in this case.
**The Court:** Well, contrib. isn't an issue.

R. at 1715–16.

Moreover, Underly devoted considerable time in his closing argument telling the jury that contributory negligence was not an issue in this case. Contrary to Underly's assertions, Advance never suggested to the jury that they base their decision upon whether or not Underly's conduct in searching for the leak was reasonable. Thus, it appears that Underly's repeated references to contributory negligence were nothing more than an attempt to invite reversible error where none otherwise existed.

court's instruction was incomplete and led to an erroneous application of the defense of misuse. We note initially that because Underly did not preserve this objection at trial, it is waived for appeal. *Montgomery Ward, supra*, at 1161. However, given the easy disposition of this issue, we address it on the merits. Underly correctly notes that his proffered instruction is from this court's decision in *Harper v. Guarantee Auto Stores* (1989), Ind.App., 533 N.E.2d 1258, *trans. denied.* What Underly does not mention is that this excerpt from *Harper* delineated the test for foreseeability as it relates to the determination of *proximate cause in a negligence action.* This is a completely different test from the foreseeability analysis we employ when determining the propriety of the defense of misuse in a products liability action. As stated above, when assessing whether a seller may claim that the plaintiff misused the product, it is entirely appropriate for the seller to claim that he did not foresee the *specific* misuse of the product. Thus, the instruction was an incorrect statement of law and the trial court did not err in refusing it.

ISSUE III. THE TRIAL COURT DID NOT ERR BY ADMITTING ADVANCE'S EXHIBIT C, SEGMENT 1.

 Underly next contends the trial court erred by admitting into evidence, over Underly's objection, Advance's exhibit C, segment 1. This portion of the exhibit was a video tape put together by Advance which demonstrated hydraulic oil coming out of a hole in a hose at various pressures. The video tape showed a hose similar in length and diameter to the one inside the retriever the day Underly was injured; a hole was drilled in the test hose approximately the same size as that which was in the original hose; a pressure gauge was connected to show the various spray patterns of hydraulic oil exiting out of the hole in the hose at different levels of pressure; the hose was not connected to any machinery, but was instead suspended in mid-air over a bucket.

Underly, both at trial and on appeal, strenuously objected to the trial court's admission of this portion of the videotape into evidence claiming: (1) because the experiments conducted on videotape were not substantially similar to those existing at the time of Underly's accident, the videotape was inadmissible reconstruction evidence; (2) it was not relevant to any issue at trial; and (3) even if relevant, it was outweighed by its prejudicial impact on the jury. We disagree.

When reviewing the correctness of the trial court's evidentiary rulings, we are constrained by an extremely limited standard of review. *Pilkington v. Hendricks County Rural Electric* (1984), Ind.App., 460 N.E.2d 1000, 1010. The admissibility of evidence as relevant is within the sound discretion of the trial court. *Id.* This court will reverse a trial court for abuse of that discretion only when the trial court's action is clearly erroneous and against the facts and circumstances before the trial court or reasonable inferences to be drawn therefrom. *Id.* Therefore, evidence may be found to be relevant although its ability to persuade is extremely light. *Id.*

*A. Exhibit C, Segment 1 Was Demonstrative Evidence.*

 As an initial matter, Underly fails to grasp the distinction between evidence of test results, reconstructive evidence, and demonstrative evidence. Reconstructive evidence is evidence offered to recreate conditions substantially similar to those existing at the time of the issue being litigated. *See, Montgomery Ward, supra*, at 1158. By comparison, demonstrative evidence is evidence offered for the purpose of illustration and clarification. *Pilkington, supra*, at 1010. To be admissible, demonstrative evidence need only be sufficiently explanatory or illustrative of relevant testimony in the case to be of potential help to the trier of fact. *Id.* (citations omitted). Here, Advance did not offer the videotaped segment to recreate the circumstances that gave rise to Underly's injury. Advance offered this evidence only to clarify and illustrate the testimony of Sletten and the testimony of Underly's expert witness, Raymond J. Black, regarding

the various ways in which hydraulic fluid could be released under high pressure from a leak in a hose. We find no error in the admission of the videotape as demonstrative evidence.[8]

### B. The Evidence Was Relevant.

 Underly also complains that the videotape, as demonstrative evidence, was irrelevant to this case. He contends the only relevance of the videotaped segment was to show what Underly *could have seen* had he turned the hydraulic line on and attempted to visually locate the source of the leak. Since it was undisputed that there was no way Underly could have seen oil coming out of the hose prior to his injury (because he did not have the line pressurized until after he placed his finger over the hole), Underly claims that the videotape's only relevance was to improperly raise suggestions of contributory negligence in a strict products liability case. Again, we disagree.

One of the primary issues in Underly's case was proving the dangerousness of leaks in high pressure hydraulic hoses. To illustrate this point, Underly solicited testimony from Black and Sletten comparing the pressure levels in the retriever's leaking hose (1000 p.s.i.) to the pressure level in a home water faucet (50 p.s.i.). Black also testified on direct examination that, to most people, the spray of fluid emanating from a high pressure hydraulic hose would appear no more dangerous than the flow of water from a garden hose. By soliciting this testimony, Underly must have considered this evidence to be relevant; he cannot now assert that Advance's videotaped segment used to merely illustrate such testimony was irrelevant. Because evidence may be found to be relevant although its ability to persuade is extremely light, *Pilk-*

*ington, supra,* we find that the trial court did not err in admitting the videotape.

### C. The Evidence Was Not Prejudicial.

 Finally, Underly argues that any relevancy of the videotape was far outweighed by its prejudicial impact on the jury. Underly alleges the videotape invited the jury to conclude that Underly could have seen the oil spraying out of the hose and, therefore, he should not have searched for the leak with his finger. Again, Underly claims that Advance was improperly suggesting contributory negligence. Relevant evidence may be determined inadmissible if its prejudicial impact is found to outweigh its probative value. *See, Rust v. Guinn* (1982), Ind.App., 429 N.E.2d 299, 306. This assessment, however, is assigned to the trial court and we may reverse only by determining that the trial court abused its discretion—which once again, it did not. Here, Underly vigorously cross-examined Sletten (who put together the videotape) regarding the differences in the circumstances surrounding Underly's accident and the portrayal of escaping hydraulic oil on segment 1 of the videotape. The trial court also gave the following limiting instruction to the jury after they had viewed the videotape:

> Ladies and gentlemen, you've heard a lot of questions and I want you to understand that, ah, particularly Segment 1 is not the identical situation that the plaintiff was faced with. You've heard the witness testify this was a test done in a testing facility, and I think that will be apparent when you see it.... [T]hat's the only reason that I—and I certainly don't want you to presume that what is in Test 1, you've heard all the questions, is the identical situation that was recreated. It's being permitted merely to show you the flow out of a—the fluid out

---

**8.** Underly presented in his reply brief on p. 38 what was purported to be authority "directly on point" from Indiana regarding the appropriate test for the admission of videotaped evidence. However, our research revealed such "dispositive authority" was not from Indiana, but rather, from the state of Illinois. We also note that in citing to this case, Underly failed to list the appropriate abbreviation designating what state

tribunal it was from; Underly made no such "omission" in the plethora of other citations he presented to this court in both his appellate brief and reply brief. While we cannot be certain this "omission" was intentional, we remind counsel for Underly of his duty to this tribunal to exercise candor when citing authority for legal arguments. *See,* Rules of Professional Conduct, Rule 3.3(a)(1).

of a hole, ah, at various pressures. That's all.

R. at 1772–74. In its final instructions, the trial court again gave a limiting instruction regarding the videotape evidence:

During the course of the trial, you were instructed that you could consider certain evidence only for a specific, limited purposes. In your deliberations, you must consider such evidence only for the purposes that the court has instructed you permissible.

R. at 854. Given these limiting instructions and Underly's opportunity to cross-examine Sletten, we find that this sufficiently mitigated any prejudicial effect the videotape might have had on the jury. Consequently, the trial court did not abuse its discretion.

The jury's verdict is affirmed.

GARRARD, J., concurs.

CHEZEM, J., concurs in result.