**LENHARDT TOOL & DIE COMPANY, INC., Appellant–Defendant,**

v.

**Duane LUMPE, Appellee–Plaintiff.**

No. 49A05–9706–CV–216.

Court of Appeals of Indiana.

Dec. 22, 1998.

---

Robert A. Anderson, Ice Miller Donadio & Ryan, Indianapolis, for Appellant–Defendant.

William L. O'Connor, Eric D. Johnson, Kightlinger & Gray, Indianapolis, for Appellee–Plaintiff.

## OPINION

SHARPNACK, Chief Judge.

Lenhardt Tool & Die Company, Inc. ("Lenhardt") appeals from a denial of its motion for summary judgment against Duane Lumpe's claims for negligence and product liability. Lenhardt raises several issues which we consolidate and restate as:

(1) whether Lenhardt designated sufficient materials in support of its motion for summary judgment to require Lumpe to designate materials to demonstrate that there was a genuine issue of material fact as to whether a mold machined by Lenhardt was involved in the injuries to Lumpe;

(2) whether Lenhardt's failure to include in the record materials designated to the trial court by Lumpe in response to Lenhardt's motion for summary judgment warrants affirmance of the trial court's denial of Lenhardt's motion; and,

(3) whether the trial court erred in denying summary judgment for Lenhardt on Lumpe's strict liability claim gov-

erned by the Indiana Product Liability Act.

We affirm.

The facts most favorable to Lumpe, the nonmovant, follow. Olin Brass ("Olin") manufactures brass bars. The manufacturing process involves pouring molten metal into a mold which allows the metal to cool and solidify into bars. The metal is cooled by water flowing through "pipes" or "spirings" within the mold. The molten metal is poured into the mold over a water tank. As the brass bar is formed by the mold, it lowers into the water tank to cool.

Lumpe worked for Olin as a "melter" or "pin man." A "melter" or "pin man" regulates the flow of molten metal into the mold. If the molten metal comes into contact with water, an explosion may occur. On August 22, 1992, an explosion occurred at Olin which injured Lumpe. Some of the molds used by Olin at the time of the explosion were made by Lenhardt. Lumpe filed a complaint for negligence and strict liability against Lenhardt Tool & Die Company, Inc.[1] Lenhardt then filed a motion for summary judgment which the trial court denied.[2]

## I.

The first issue we must resolve is whether or not Lenhardt sufficiently demonstrated the lack of a material issue of fact on a material element of Lumpe's claim and that it was entitled to summary judgment as a matter of law. Lenhardt designated in support of its motion for summary judgment various items including an affidavit of Jack Lenhardt, portions of the deposition of Claude Johnson, portions of the deposition of Dwayne Lumpe, the response of Olin Manufacturing to nonparty production, and Lumpe's response to a request for admissions and interrogatories filed by Weldaloy Products Company, Inc. and Creative Foam, Inc. Based on these items, Lenhardt argued to the trial court, and argues to us, that

because the molds and plugs being used at the time of the accident cannot be identified or located, Lumpe cannot prove that the molds were manufactured by Lenhardt, let alone negligently manufactured or manufactured so as to be dangerously defective. Lenhardt argues that once it demonstrated that Lumpe could not prove the mold was manufactured by Lenhardt, the burden shifted to Lumpe under Ind. Trial Rule 56 to come forward with evidence to prove that the mold was manufactured by Lenhardt and that if Lumpe failed to do so, as Lenhardt contends, it is entitled to summary judgment which the trial court erroneously denied. The issue for us is whether the evidence designated by Lenhardt sufficiently demonstrates the lack of a material issue of fact that Lenhardt manufactured the mold. Simply put, may a defendant succeed in a motion for summary judgment by showing the plaintiff lacks sufficient proof to establish an essential element of the plaintiff's claim on which the plaintiff bears the burden of proof.

Resolution of this issue brings into focus the contrast between the federal practice as expressed in *Celotex Corp. v. Catrett* and our state practice as expressed in *Jarboe. Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jarboe v. Landmark Community Newspapers*, 644 N.E.2d 118 (Ind.1994), *reh'g denied.* In *Celotex*, the United States Supreme Court held that:

"... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case neces-

1. Lumpe also filed his complaint against Weldaloy Products Company, Inc., Creative Foam, Inc., and Delaware Machinery & Tool Company, Inc. However, they are not parties to this appeal.

2. Both Delaware and Lenhardt filed motions for summary judgment. Initially, the trial court

granted summary judgment for Lenhardt and denied summary judgment for Delaware. Following this order, Delaware filed a motion to reconsider. The trial court granted the motion and entered the instant order being appealed.

sarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. . . .

\* \* \* \* \*

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. . . . [R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."

*Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. In *Jarboe*, our supreme court held:

"The burden imposed at trial upon the party with the burden of proof on an issue is significantly different from that required of a non-movant in an Indiana summary judgment proceeding. Under Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence.

In this respect, Indiana's summary judgment procedure abruptly diverges from federal summary judgment practice. Under the federal rule, the party seeking summary judgment is not required to negate an opponent's claim. The movant need only inform the court of the basis of the motion and identify relevant portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.' [*quoting Celotex*, 477 U.S. at 323, 106 S. Ct at 2553.]

The burden then rests upon the non-moving party to make a showing sufficient to establish the existence of each challenged element upon which the non-movant has the burden of proof. Indiana does not adhere to *Celotex* and the federal methodology.

In the present case, the defendants do not support their motion for summary judgment with any designated evidence to establish the absence of a question of fact on an outcome-determinative issue as to the promissory estoppel claim. Merely alleging that the plaintiff has failed to produce evidence on each element of promissory estoppel is insufficient to entitle the defendant to summary judgment under Indiana law."

*Jarboe*, 644 N.E.2d at 123 (citations and footnote omitted).

Lenhardt argues that the *Jarboe* court did not overrule or distinguish its previous holding in *Hinkle v. Niehaus Lumber Company*, 525 N.E.2d 1243 (Ind.1988). The *Hinkle* court quoted from T.R. 56(E) as follows:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. . . . "

*Hinkle*, 525 N.E.2d at 1245. The court continued:

"A party opposing summary judgment is 'obliged to disgorge sufficient evidence' to show the existence of a genuine triable issue. The party opposing summary judgment must 'come forth with specific facts

showing that there is a genuine issue for trial.'"

*Id.* at 1245–1246.

In *Hinkle,* the plaintiff was injured when there was a failure of sheet metal roofing installed over a shed where corrosive salt compounds were stored. *Id.* at 1244. The roofing had corroded. *Id.* On the issue of whether there was evidence that the supplier (Niehaus) knew or had reason to know that the product was likely to be dangerous when used in a foreseeable manner, the court noted that Hinkle had presented no evidence to show that Niehaus knew or should have had any reasonable expectation that the metal roofing sheets were to be used in an unusually corrosive environment. *Id.* at 1245. The court quoted from the deposition of the roofing contractor as evidence that Niehaus had no idea how or where its roofing material was to be used. *Id.* The deposition was submitted by Niehaus in support of its motion for summary judgment. In contrast, the plaintiff Hinkle submitted nothing whatever and relied upon the materials submitted by Niehaus. *See Hinkle v. Niehaus Lumber Co.,* 510 N.E.2d 198 (Ind.Ct.App.1987), *vacated,* 525 N.E.2d 1243 (Ind.1988). Thus, it is clear that Niehaus had presented evidence of its lack of knowledge in support of its motion for summary judgment. It is in that context that the court referred to Hinkle's burden to come forward and identify or present evidence showing that Niehaus either knew or should have had some reasonable expectation that the metal roofing sheets were to be used in an unusually corrosive environment. *Id.* at 1245–1246. *Hinkle* does not support Lenhardt's position here.

Lenhardt also relies upon the case of *Briggs v. Finley,* 631 N.E.2d 959 (Ind.Ct. App.1994), *trans. denied. Briggs* involved a plaintiff who was injured when his car collided with a horse of the defendant, which had gotten loose from the defendant's premises. The trial court granted summary judgment to the defendant, and we affirmed on appeal. Lenhardt quotes from *Briggs* in his brief to us as he did to the trial court below:

"A defendant is entitled to judgment as a matter of law when he shows that the undisputed material facts negate at least one element of the plaintiff's claim for relief. *Moore v. Sitzmark Corp.* (1990), Ind.App., 555 N.E.2d 1305, 1307. A court must grant summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. ***In this instance, there is no genuine issue of material fact, because a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial.*** *Id.* The movant is entitled to judgement as a matter of law because the non-moving party has failed to make a sufficient showing on an essential element of his case to which he bears the burden of proof at trial. *Id.*"

Appellant's brief, p. 13; Record, pp. 123–124. In this quotation from *Briggs,* Lenhardt omitted the following citation, which immediately preceded the bold and underlined sentence: "*Watson Rural Water Co. v. Indiana Cities Water Corp.,* 540 N.E.2d 131, 139 (Ind. Ct.App.1989), *trans. denied (quoting Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986))." It is clear that *Briggs,* in relying on *Watson,* relied upon the *Celotex* standard for reviewing motions for summary judgment.

■■■■ It is clear that under the *Jarboe* analysis, Lenhardt would have had to designate some evidence that the mold was not manufactured by Lenhardt in order to require Lumpe to come forward with evidence that the mold was manufactured by Lenhardt. Simply demonstrating that Lumpe does not have sufficient evidence to prove the mold was manufactured by Lenhardt is not enough. The practical consequences of this analysis could be that in some cases summary judgment would be denied to a defendant where at the conclusion of the plaintiff's evidence, if it is no better at trial than shown to be by the defendant at summary judgment, the defendant would be granted a motion for judgment on the evidence under T.R. 50 by reason of the plaintiff's failure to prove an essential element of his case. However, the dictate of *Jarboe* is consistent with the

recognition that summary judgment terminates the right to trial and that summary judgment will be denied even though it appears that the plaintiff may not succeed at trial. *Greathouse v. Armstrong,* 616 N.E.2d 364, 365–366 (Ind.1993).

Because Lenhardt did not designate sufficient materials in support of its motion for summary judgment to require Lumpe to designate materials to demonstrate the existence of a genuine issue of material fact as to whether Lenhardt machined the mold in question, the trial court did not err when it denied Lenhardt's motion for summary judgment on the negligence claim.

## II.

Lumpe argues, in addition, that Lenhardt cannot succeed on appeal because it has (1) failed to address the material designated by Lumpe that showed there was a genuine issue of fact and (2) further failed to include some of these materials in the record. It is true that Lenhardt did not include in the record portions of the depositions of Claude Johnson and Roger Long that Lumpe designated to the trial court. Lumpe asserted to the trial court that these depositions showed facts supporting the inference that the mold involved in the accident was a Lenhardt mold. Lenhardt does not dispute that it did not include the items identified by Lumpe, but responds that if it omitted necessary parts of the record in Lumpe's view, Lumpe was free to request a supplemental record.

■ It is the duty of an appellant to provide this court with a record sufficient to enable us to review the claim of error. *Adams v. State,* 539 N.E.2d 985, 988 (Ind.Ct. App.1989). We cannot adequately review a claim that a trial court erred in denying a motion for summary judgment when the appellant does not include in the record all those things designated to the trial court and before it when it made its decision. *See id.* Our standard of review requires us to examine the materials designated to the trial court and limits us to a review of those materials. *Yin v. Society Nat'l Bank Indiana,* 665 N.E.2d 58, 62 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* We cannot reverse a judgment for error alleged in a ruling dependent upon facts not before us. *Raymundo v. Hammond Clinic Assoc.,* 449 N.E.2d 276, 282 (Ind.1983). By omitting facts the trial court had before it in ruling on its motion for summary judgment, Lenhardt has precluded review of its claimed error. *See id.; Adams,* 539 N.E.2d at 987–989.

Because Lenhardt failed to designate sufficient materials to the trial court and failed to include in the record on appeal some of the materials designated by Lumpe to the trial court, we need not consider further whether the trial court erred in denying Lenhardt's motion for summary judgment. Specifically, we do not need to consider the sufficiency of Lumpe's designation of materials to the trial court, because the materials designated by Lenhardt did not demonstrate the lack of a genuine issue that it was not a Lenhardt mold involved in the accident. We affirm the denial.

## III.

The third issue is whether the trial court erred in denying summary judgment for Lenhardt on Lumpe's strict liability claim governed by the Indiana Product Liability Act ("the Act"). Ind.Code §§ 33–1–1.5–1 through 33–1–1.5–10. Specifically, Lenhardt claims that the Act is not applicable to this suit because Lenhardt provides services, not products, and is not a seller under the Act. At the time of the accident which gave rise to Lumpe's complaint, the Act provided, in pertinent part, that:

> "(a) One who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm caused by that product to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and if:
>
> (1) The seller is engaged in the business of selling such a product; and
>
> (2) The product is expected to and does reach the user or consumer without substantial alteration in the condition in

which it is sold by the person sought to be held liable under this chapter.

(b) The rule stated in subsection (a) applies although:

(1) The seller has exercised all reasonable care in the preparation, packaging, labeling, instructing for use, and sale of his product; and

(2) The user or consumer has not bought the product from or entered into any contractual relation with the seller."

I.C. § 33–1–1.5–3 (1983) (amended 1995).[3]

First, Lenhardt claims that its transactions with Olin involved the sale of a service, not a product. Lenhardt correctly states that the Act does not apply to transactions which involve "wholly or predominantly the sale of a service rather than a product." I.C. § 33–1–1.5–2(6). However, the distinction between service and product is not so easily determined. In *Denu v. Western Gear Corp.,* the district court held that "Indiana's statute of limitations would not bar an interpretation allowing recommencement of the statute when a product has been reconditioned, altered, or modified to the extent that a new product has been introduced into the stream of commerce." *Denu v. Western Gear Corp.,* 581 F.Supp. 7, 8 (S.D.Ind.1983). Similarly, in *Whitaker v. Snow Co., Inc.,* the district court embarked on a thorough analysis of the distinction between a product and a service under the Act. *Whitaker v. T.J. Snow Co., Inc.,* 953 F.Supp. 1034, 1039–1045 (S.D.Ind.1997), *aff'd,* 151 F.3d 661 (7th Cir. 1998). The court concluded that the repair or refurbishing of a product constitutes a service while the reconditioning or reconstruction of a product creates a new product.[4] *Id.* at 1044.

▮▮▮ Although in a different context, our tax court addressed this same distinction and held that:

"[O]rdinary repair creates no new products and is properly characterized as a service. Ordinary repair activity merely perpetuates existing products ... and although ordinary repair activity may impact the number of scarce economic goods by increasing their longevity, it cannot be said that ordinary repair produces scarce economic goods.

However, as the legislature has recognized [in the context of the consumption exemption to state sales tax codified in I.C. § 6–2.5–5–5.1], at some point, the repair activity is so extensive in nature and so transforms the object such that it cannot be characterized as a mere service. Rather, the repair activity produces a new product. . . ."

*Rotation Products Corp. v. Dept. of State Rev.,* 690 N.E.2d 795, 801 (Ind.Tax 1998). We adopt the analysis of *Denu, Whitaker,* and *Rotation,* and hold that where an entity reconditions, alters, or modifies a product or raw material to the extent that a new product has been introduced into the stream of commerce, the entity is a manufacturer and provider of products under the Act. Moreover, where a product exists prior to the work performed, the extent of the repair or work performed on the product determines whether an entity has created a new product or merely serviced an existing product. Thus, the distinction in such a case is a matter of degree to be determined on a case by case basis. *See Rotation,* 690 N.E.2d at 802.

▮▮▮ Here, Olin would ship solid blocks of metal to Lenhardt with drawings and specifications. Lenhardt would then machine the block of metal into molds per the designs found in the drawings and specifications. Thus, Lenhardt transformed the metal block into "a new product" that is substantially different from the raw material used. Therefore, it has introduced a new product into the stream of commerce and provided products to Olin, not mere services. At other times, Olin would ship damaged molds to Lenhardt to be restored to the original designs found in the drawings and specifications. Depending upon the degree of work

---

3. As the accident occurred in 1992, we use the versions of the statutes which were effective at that time.

4. The accident which gave rise to the suit in *Whitaker* occurred in 1993. *Whitaker,* 953 F.Supp. at 1039. Thus, the version of the Act which the court analyzed was the same as we address here.

needed, the repair of a damaged mold could be either the creation of a new product or the service of repairing the original product. *See Whitaker*, 953 F.Supp. at 1044; *Rotation Products Corp.*, 690 N.E.2d at 801. Therefore, we hold that there is a genuine issue of material fact as to whether the alleged defective mold had been created or serviced by Lenhardt.

Next, Lenhardt argues it is not a seller within the meaning of the Act. At the time of the explosion, the Act defined "seller" as "a person engaged in business as a manufacturer, a wholesaler, a retail dealer, a lessor, or a distributor." I.C. § 33–1–1.5–2. As we have determined that Lenhardt created a new product when it made the molds, and possibly when it repaired the molds, Lenhardt is properly considered a manufacturer of molds. Thus, Lenhardt is a seller under the Act. *See id.* Therefore, the trial court did not error in denying Lenhardt's motion for summary judgment on Lumpe's strict liability claim.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

RUCKER, J., concurs.

GARRARD, J., concurs in part and dissents in part.

GARRARD, Judge, concurring in result in part and dissenting in part.

I concur in the result reached by the majority on issue I. I disagree with the majority's assertion that "Lenhardt would have had to designate some evidence that the mold was *not* manufactured by Lenhardt" in order to secure summary judgment. It would have been sufficient for summary judgment had Lenhardt been able to show that Lumpe had no evidence that Lenhardt made the mold and would not be able to get anything further. *See Letson v. Lowmaster*, 168 Ind. App. 159, 341 N.E.2d 785 (1976). Here, Lenhardt did not shut the door and summary judgment was properly denied.

I dissent as to issue II. Indiana Appellate Rule 7.2(B) provides, in part:

The appellant shall designate only those parts of the record to be transmitted to the court on appeal, ... unless thereafter the court on appeal shall order, or any party shall request, the transmission of ... other parts of the record. *Parts which are not transmitted to the court on appeal shall nevertheless be a part of the record on appeal for all purposes.*

(Emphasis added).

It is, of course, an appellant's burden to demonstrate reversible error, and if he fails to designate portions of the record necessary to demonstrate a particular error he may fail in his burden.

Secondly, our rules recognize that there are judgment calls to be made in how much of the record is necessary for appeal. For that reason the above-cited rule permits the court or an opposing party to supplement the record if they feel it necessary, and frequently this is done.

Thirdly, from appellee's counsel's point of view, few things can be more gratifying and potentially outcome determinative than being able to point out to an appellate tribunal that one's opponent has omitted from the record all mention of a clearly dispositive piece of evidence. (That, incidentally, is not the situation in the case before us.)

For the majority to hold, as it does here, that a party's failure to bring to the record for appeal every item designated to the trial court in support and in opposition of a motion for summary judgment in order to secure appellate review is both contrary to the provisions of the rules and wrongheaded.

Finally, I concur in the result reached as to issue III.