**LAFAYETTE SQUARE AMOCO, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0510–TA–83.

Tax Court of Indiana.

May 24, 2007.

Steven P. Meyer, Ball Eggleston PC, Lafayette, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Andrew W. Swain, Special Counsel, Tax Section, Jennifer E. Gauger, Deputy Attorney General, Indianapolis, Attorneys for Respondent.

FISHER, J.

Lafayette Square Amoco, Inc. (LSA) appeals the final determination of the Indiana Department of State Revenue (Department) assessing it with gross retail tax (sales tax) liability on income received from oil changes performed during the 1999, 2000, and 2001 tax years (years at issue). The issues for the Court to decide are (1) whether the Department properly assessed sales tax on materials LSA used in oil changes performed during the years at issue, and (2) whether the Department properly denied LSA's request to waive the 10% negligence penalty imposed on its sales tax liability.

## FACTS AND PROCEDURAL HISTORY

LSA operates a gas station in Lafayette, Indiana. During the years at issue, LSA also provided general automotive service work, which included brake and muffler repair, tune-ups, radiator fills, wiper replacements, and oil changes. In 2002, the Department conducted an audit of LSA for the tax years at issue. After completing the audit, on October 29, 2002, the Department issued proposed assessments of sales tax against LSA because it determined that LSA had not charged sales tax on oil changes performed during the years at issue and, therefore, had not remitted the correct amount of sales tax to the Department. Consequently, the Department's assessments also included a ten percent (10%) negligence penalty and interest.[1]

In a letter dated December 11, 2002, LSA's President, Mr. John O'Grady, protested the assessments, claiming that LSA did charge sales tax on both the materials *and* labor on oil changes it performed. On September 15, 2005, after an administrative hearing, the Department issued a Letter of Findings (LOF) denying LSA's protest.

On October 12, 2005, LSA initiated an original tax appeal. The Court conducted a trial on October 2, 2006, and then heard the parties' oral arguments on February 16, 2007. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court reviews final determinations of the Department *de novo*. IND.

---

1. Other taxes and charges were also included in the proposed assessments; however, those charges are not at issue before this Court.

CODE ANN. § 6–8.1–5–1(h) (West 2007). Accordingly, the Court is bound by neither the evidence nor the issues presented at the administrative level. *Galligan v. Indiana Dep't of State Revenue*, 825 N.E.2d 467, 472 (Ind. Tax Ct.2005), *review denied.* Although a statute that imposes a tax is strictly construed against the State, the burden of proving that the proposed assessment is wrong rests with the person against whom the proposed assessment is made. *Clifft v. Indiana Dep't of Revenue*, 748 N.E.2d 449, 452 (Ind. Tax Ct.2001) (internal quotation and citation omitted).

## Discussion

■ Indiana imposes an excise tax, known as the state sales tax, on retail transactions made within the state. IND. CODE. ANN. § 6–2.5–2–1(a) (West 2007). During the years at issue, a taxable retail transaction was defined as "a transaction of a retail merchant that constitutes selling at retail[.]" IND. CODE ANN. § 6–2.5–1–2(a) (West 2001). In turn, a retail merchant is selling at retail when, "in the ordinary course of his regularly conducted trade or business, he [ ] acquires tangible personal property for the purpose of resale; and [ ] transfers that property to another person for consideration." [2] IND. CODE ANN. § 6–2.5–4–1(b)(1), (2) (West 2001) (amended 2003) (footnote added).

"The person who acquires property in a retail transaction is liable for the tax on the transaction and . . . shall pay the tax to the retail merchant as a separate added amount to the consideration in the transaction." A.I.C. § 6–2.5–2–1(b). The retail merchant merely collects the tax as an agent for the state. *Id.* Consequently, the retail merchant "holds the taxes in trust for the state and is personally liable for the payment of those taxes, plus any penalties and interest attributable to those taxes, to the state." IND. CODE ANN. § 6–2.5–9–3 (West 2001). To that end, if the Department reasonably believes that a retail merchant has not reported or remitted the proper amount of tax due, the Department has the authority to make a proposed assessment against the merchant for the unpaid tax on the basis of the best information available to it. *See* A.I.C. § 6–8.1–5–1(a) (West 2001).

In this case, the Department notified LSA that it would conduct an audit of the tax years at issue. Within that notice and throughout the audit process, the Department's auditor (auditor), attempted to obtain from LSA—through written and oral requests—the necessary records to calculate the amount of sales tax LSA was required to remit to the Department. (*See* Trial Tr. at 99–110; J. Exs. 3, 5, and 6.) While LSA provided some documents, it did not provide any documents relative to oil changes performed *during the years at issue.*[3] Mr. O'Grady merely offered to the auditor access to LSA's computer to inspect the relevant invoices, readily admitting, however, that such an inspection would be very difficult and time-consuming.[4] (*See* Trial Tr. at 14–17, 100–02 (footnote added).)

---

2. Thus, because selling at retail requires the transfer of tangible personal property, the sale of services generally falls outside the scope of taxation because no transfer of tangible personal property occurs. *Howland v. Indiana Dep't of State Revenue*, 790 N.E.2d 627, 628 (Ind. Tax Ct.2003).

3. During the audit, LSA did submit 39 invoices, dated during the 1997 and 1998 tax years, which indicated that sales tax was

charged on those particular transactions. (*See* Pet'r Ex. 1; Trial Tr. at 23–28, 109.) The auditor, however, determined that those invoices were not probative because they were for transactions that occurred prior to the tax years at issue. (*See* Trial Tr. at 108–09.)

4. During a deposition, when asked why he did not provide the auditor with all of the invoices for the tax years at issue, Mr. O'Grady responded:

In response, the auditor specifically asked Mr. O'Grady to provide paper copies of the invoices in order to avoid any damage to LSA's computer or its contents. (*See* Trial Tr. at 100–01.) When Mr. O'Grady still did not provide paper copies, the auditor scheduled an appointment with him to inspect the records on the computer. (*See* Trial Tr. at 110; J. Ex. 6.) Mr. O'Grady subsequently cancelled the appointment because LSA was having "some kind of computer problems" such that the auditor could not view the invoices. (*See* Trial Tr. at 86–87, 110.) Given the inability to access LSA's records, the auditor relied on an invoice, dated September 20, 1999, indicating that LSA had not charged sales tax at all on an oil change, to make a Best Information Available (BIA) assessment against LSA for $13,674.23 in unpaid sales tax.[5] (*See* J. Ex.1 at 2, 4, 16; Trial Tr. at 110–14 (footnote added).)

When LSA protested the assessment in December of 2002, Mr. O'Grady provided the Department with 57 oil change invoices demonstrating that sales tax was charged on those particular transactions. (*See* J. Ex. 9.) Nevertheless, when asked to provide all of the service center's invoices in January of 2005 as part of a supplemental audit, Mr. O'Grady claimed he no longer had those records because his computer system automatically purged the invoices after 3 years. (*See* J. Ex. 7; Trial Tr. at 65–66.) The Department denied LSA's protest because it "no longer ha[d] documentation to support the lack of liability" for the tax. (*See* J. Ex. 11 at 4.)

As a taxpayer claiming it is not within the ambit of taxation, LSA bears the burden of proving the proposed assessment is wrong. *See Clifft*, 748 N.E.2d at 452 (citation omitted). LSA must, therefore, present a prima facie case in order to meet its burden. *See Longmire v. Indiana Dep't of State Revenue*, 638 N.E.2d 894, 898 (Ind. Tax Ct.1994). A prima facie case is one in which the evidence is "sufficient to establish a given fact and which if not contradicted will remain sufficient." *Id.* (internal citation omitted). LSA, however, has failed to meet that burden.

Indiana Code § 6–8.1–5–4 states, in pertinent part:

Every person subject to a listed tax must keep books and records so that the

Well, it was a complicated, long process in order to pull up a work order. I didn't have a field where I could type in "lube oil filters" and push a button and have the computer spit out all those lube oil filters. We had to go back and search by the customer's last name, and then we had to search by the first name because they may have had more than one family member that was a customer. And then they had a list of vehicles and we had to go through each and every vehicle and look at all the work orders that were listed under each and every vehicle and find one that had a lube oil filter. We had about 5,000 customers within our database, and to pull out all the lube oil filter work orders would have been extremely time consuming. (J. Ex. 8 at 17–18.) In fact, Mr. O'Grady testified at trial that "I could have sat there for three or four weeks, ten hours a day, and found every single invoice and printed them out and in hindsight I wish I had." (Trial Tr. at 77.)

5. Specifically, the auditor determined from LSA's profit and loss statements that LSA generated $506,453 in revenue from oil changes during the years at issue. (*See* J. Ex.1 at 15; Trial Tr. at 111–13.) The auditor then contacted other businesses in the area (i.e., Walmart and Firestone) that charged the same amount for oil changes and determined that 54% of the price was attributable to materials used. (*See* J. Ex. 1 at 4; Trial Tr. at 111–14.) Using that same percentage, the auditor determined that $273,485 of LSA's overall revenue was subject to five percent (5%) sales tax. (*See* Trial Tr. at 117.) *See also* IND. CODE ANN. § 6–2.5–2–2(a) (West 2001) (amended 2002) (stating that the sales tax rate during the years at issue was 5%).

[D]epartment can determine the amount, if any, of the person's liability for that tax by reviewing those books and records. The records referred to in this subsection include *all source documents necessary to determine the tax*, including invoices, register tapes, receipts, and canceled checks. [ ] *A person must retain the books and records ... for a period of at least three (3) years after the date the final payment of the particular tax liability was due*, unless after an audit, the [D]epartment consents to earlier destruction.... A person must allow inspection of the books and records [ ] by the [D]epartment or its authorized agents at all reasonable times.

IND. CODE ANN. § 6–8.1–5–4(a), (b), (c) (West 2001) (emphases added). LSA, however, did not submit all of its invoices such that the amount of sales tax owed during the years at issue can be determined. Indeed, the invoices were unavailable for review during the initial audit process, during the supplemental audit in January 2005, and now before this Court.

Because LSA was put "on notice" that the records were essential to the resolution of the contested liability by the initiation of the audit and the resulting assessment, LSA's failure to retain its records ultimately serves as the proverbial "nail in its coffin" with respect to meeting its burden of proof. *See* A.I.C. § 6–8.1–5–4(b)(2); *Clifft*, 748 N.E.2d at 452 (stating that the burden rests with the taxpayer to prove an assessment is wrong). *See also Galligan*, 825 N.E.2d at 475 n. 5 (explaining that when a taxpayer is required to remit taxes to the Department, the taxpayer should make a concerted effort to access and retain records necessary to determine taxability).

▮▮▮ Having said that, LSA should be given credit for the 57 invoices it submitted from the tax years at issue demonstrating that sales tax was charged on those oil changes, so as to avoid double taxation. Beyond those 57 specific transactions, however, the invoices do not prove that the remaining amount of the sales tax assessment is wrong.[6] *See Clifft*, 748 N.E.2d at 452 (footnote added).

---

6. LSA argues that all of the invoices it submitted (from the pre-audit and audit periods) were sufficient to establish a prima facie case that the assessment was wrong. (*See* Pet'r Proposed Findings and Conclusions at 5–6; Oral Argument Tr. 5–6, 24–25.) Specifically, LSA contends that it provided a representative sample of almost 100 invoices indicating that it charged sales tax, while the Department's assessment relies on only one invoice where sales tax was not charged. That reliance, LSA claims, is arbitrary and capricious and must be overturned. The Court, however, must disagree.

The 100 invoices to which LSA refers consist of the 39 invoices it submitted from the 1997 and 1998 tax years (pre-audit period) and the 57 invoices from the years at issue. Although all of these invoices show that sales tax was charged on those particular transactions, LSA has not demonstrated that the submitted sample constitutes a representative sample, as Mr. O'Grady handpicked all of the

invoices. More specifically, the auditor testified that when the Department chooses to utilize a representative sample to determine taxability, typically the *Department* selects the sample from all of a taxpayer's records for the relevant period. (*See* Trial Tr. at 141.)

In this case, Mr. O'Grady submitted the 39 pre-audit invoices to the auditor in 2002, a point at which LSA's computer would have automatically purged those records. (*See* Trial Tr. at 65–66.) Nevertheless, Mr. O'Grady suggested that the invoices must have been "specially-tagged" or saved for a certain purpose (i.e., a customer complaint, additional service was required, etc.). (*See* J. Ex. 8 at 30, 39.) Similarly, with respect to the other 57 invoices, Mr. O'Grady stated, "I did print some of the invoices as a representative sample and I had no idea that there was a lube-oil filter invoice that didn't have sales tax applied to it." (Trial Tr. at 77.) Mr. O'Grady explained that the invoice that did not charge sales tax "was a mistake [and was] probably

LSA also seeks to waive the 10% negligence penalty imposed on the assessments pursuant to Indiana Code § 6–8.1–10–2.1. That statute provides that if a taxpayer "incurs, upon examination by the [D]epartment, a deficiency that is due to negligence[, or] fails to timely remit any tax held in trust for the state[,]" the taxpayer is subject to a penalty. IND. CODE ANN. § 6–8.1–10–2.1(a) (West 2001). If, however, the taxpayer makes an affirmative showing (in a written statement) that its failure to pay the deficiency or remit taxes was due to reasonable cause and not willful neglect, the Department shall waive the penalty.[7] See A.I.C. § 6–8.1–10–2.1(d), (e) (footnote added).

LSA has not asserted or demonstrated any facts affirmatively showing that its failure to pay/remit the deficient amount of sales tax was due to reasonable cause.[8]

(See J. Exs. 9 at 1–2, 11 at 5 (footnote added).) Instead, the fact that LSA was not aware that sales tax had not been applied in at least one of its transactions and apparently did not check its invoices to assure sales tax was appropriately charged demonstrates negligence on LSA's part. See supra, ns.4, 6. See also 45 I.A.C. 15–11–2(b). As such, the penalty must stand.

## CONCLUSION

LSA has failed to show that the Department's proposed assessment was incorrect. The Department's final determination is, therefore, AFFIRMED; the matter is remanded to the Department, however, to reduce the assessment by the amount of sales tax LSA charged as indicated on the 57 invoices it submitted with its protest letter. In addition, the Court upholds the

---

done by a tired, hurried mechanic[.]" (Trial Tr. at 34.)

Given Mr. O'Grady's statements, it is not unreasonable to conclude that had the Department had access to more records, more invoices may have indicated that sales tax was not charged. Therefore, the Court cannot conclude that LSA's evidence sufficiently rebutted the presumption of validity statutorily afforded to the Department's assessment. See IND CODE ANN § 6–8.1–5–1(b) (West 2001) (stating that "notice of a proposed assessment is prima facie evidence that the [D]epartment's claim for the unpaid tax is valid").

7. The Department's administrative regulations state:

"[n]egligence" on behalf of a taxpayer is defined as the failure to use such reasonable care, caution, or diligence as would be expected of an ordinary reasonable taxpayer. Negligence would result from a taxpayer's carelessness, thoughtlessness, disregard or inattention to duties placed upon the taxpayer by the Indiana Code or [D]epartment regulations. Ignorance of the listed tax laws, rules and/or regulations is treated as negligence. Further, failure to read and follow instructions provided by the [D]epartment is treated as negligence. Negligence shall be determined on a case by case basis according to the facts and circumstances of each taxpayer.

* * * *

In order to establish reasonable cause, the taxpayer must demonstrate that it exercised ordinary business care and prudence in carrying out or failing to carry out a duty giving rise to the penalty imposed[.]

45 IND. ADMIN. CODE 15–11–2(b), (c) (1996). See also IND CODE ANN § 6–8.1–10–2.1(f) (West 2001) (authorizing the Department to define the terms for purposes of the penalty statute).

8. In fact, the only statement made with respect to the penalty to this Court was Mr. O'Grady's testimony that, "I don't believe I should be responsible for [a negligence] penalty because [LSA] paid all of [its] taxes, [LSA] collected the right amount of taxes and [LSA] turned around and paid them to the [Department]. [LSA] should not be penalized for that type of activity." (Trial Tr. at 66.) This statement, however, does not demonstrate or allege facts establishing reasonable cause for failure to pay the assessed deficiency. See A.I.C. § 6–8.1–10–2.1(d); 45 I.A.C. 15–11–2(b), (c).

portion of the negligence penalty imposed against LSA that corresponds with the sales tax deficiency addressed in this opinion.