ATTORNEYS FOR PETITIONERS:

**DAVID F. McNAMAR**
McNAMAR & ASSOCIATES, P.C.
Indianapolis, IN

**F. PEN COSBY**
CREMER & CREMER
Indianapolis, IN

**JAMES K. GILDAY**
GILDAY & ASSOCIATES, P.C.
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:

**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**JOHN P. LOWREY**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

_____

# IN THE
# INDIANA TAX COURT

_____

| | | |
|---|---|---|
| PAUL J. ELMER and CAROL A. N. ELMER, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1110-TA-00064 |
| | ) | |
| INDIANA DEPARTMENT OF STATE REVENUE, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

FILED
Sep 01 2015, 2:43 pm

CLERK
of the supreme court,
court of appeals and
tax court

_____

### ORDER ON RESPONDENT'S
### MOTION FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**September 1, 2015**

FISHER, Senior Judge

Paul J. Elmer and Carol A. N. Elmer have appealed the Indiana Department of State Revenue's assessments of Indiana adjusted gross income tax (AGIT) for the 2005, 2006, 2007, and 2008 tax years (the years at issue). The matter is currently before the Court on the Department's Motion for Summary Judgment. While the

Department's Motion presents three issues, the Court consolidates and restates them as: whether the Department, in determining the Elmers' Indiana AGIT liability, erred in disallowing their business expense and uncollectible debt deductions.[1]

## FACTS AND PROCEDURAL HISTORY

During the years at issue, Mr. Elmer was the sole shareholder and president of two S-Corporations: Pharmakon Long Term Care Pharmacy, Inc., an institutional pharmacy, and Hamilton Consulting Group, Inc. (See Br. Supp. Resp't Mot. Summ. J. ("Resp't Br."), Ex. 3 at 4; Pet'rs' Resp. Resp't Summ. J. Mot. ("Pet'rs' Br.") at 5 (citing Aff. Paul Elmer ("Elmer Aff.") ¶¶ 2-3; Resp't Br., Ex. 8 at 10-11).) As a result, the Elmers' Indiana income tax returns reported their income and losses as well as those of Pharmakon and Hamilton. (See Resp't Br., Ex. 3 at 4.) See also Riverboat Dev., Inc. v. Indiana Dep't of State Revenue, 881 N.E.2d 107, 109 n.4 (Ind. Tax Ct. 2008) (explaining that the income and losses of an S-Corporation are passed through to its owners (i.e., shareholders) who, in turn, report their pro-rata shares on their individual tax returns), review denied.

The Department subsequently determined that the deductions taken by the Elmers for vehicle, contract labor, operating, and management/marketing expenses were not valid business expense deductions. (See Resp't Br., Ex. 3 at 4-13.) The Department also determined that the Elmers had improperly taken a deduction for an uncollectible debt in 2008. (See Resp't Br., Ex. 3 at 13-14.) Consequently, the Department disallowed all of the Elmers' deductions, recalculated their AGIT liability, and assessed them with additional AGIT, interest, and penalties for the years at issue.

---

[1] The Department has designated evidence that contains confidential information. Accordingly, the Court will provide only that information necessary for the reader to understand its disposition of the issues presented. See generally Ind. Administrative Rule 9.

(See Resp't Br., Ex. 1, Ex. 3 at 4.)

The Elmers protested the Department's assessments. (See Resp't Br., Ex. 3 at 4.) On August 31, 2011, the Department issued a Letter of Findings (LOF) that ultimately upheld the assessments.[2] (See generally Resp't Br., Ex. 3.)

On October 25, 2011, the Elmers initiated this original tax appeal. On September 13, 2013, the Department filed its Motion. On April 7, 2014, the Court held a hearing on the Motion. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

This Court reviews the Department's final determinations regarding proposed assessments de novo. IND. CODE § 6-8.1-5-1(i) (2015). Accordingly, the Court is not bound by the evidence or the issues presented at the administrative level. See Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue, 865 N.E.2d 725, 727 (Ind. Tax Ct. 2007), review denied.

Summary judgment is proper only when the designated evidence demonstrates that no genuine issues of material fact[3] exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). When the Department moves for summary judgment, it may make a prima facie showing that there is no genuine issue of material fact as to the validity of an unpaid tax by properly designating its proposed

---

[2] The Department's LOF provided that the Elmers' claim regarding the uncollectible debt could be sustained if they provided sufficient documentation to substantiate the deduction. (See Br. Supp. Resp't Mot. Summ. J. ("Resp't Br."), Ex. 3 at 14.) The Department subsequently determined that the documentation the Elmers provided was insufficient. (See, e.g., Pet'rs' Original Tax Appeal Pet. to Set Aside a Final Determination of [Resp't] ¶ 6(c) (alleging that the Department erred in disallowing the uncollectible debt deduction).)

[3] A genuine issue of material fact exists when a fact concerning an issue that would dispose of the case is in dispute or when the undisputed facts support conflicting inferences as to the resolution of an issue. Miller Pipeline Corp. v. Indiana Dep't of State Revenue, 995 N.E.2d 733, 734 n.1 (Ind. Tax Ct. 2013).

3

assessments.[4] <u>Indiana Dep't of State Revenue v. Rent-A-Center E., Inc.</u> (<u>RAC II</u>), 963 N.E.2d 463, 466-67 (Ind. 2012). <u>See</u> <u>also</u> <u>Filip v. Block</u>, 879 N.E.2d 1076, 1080-82 (Ind. 2008) (discussing the designation of evidence requirements of Trial Rule 56). "The burden then shifts to the taxpayer to come forward with sufficient evidence demonstrating that there is, in actuality, a genuine issue of material fact with respect to the unpaid tax." <u>RAC II</u>, 963 N.E.2d at 467.

## LAW AND ANALYSIS

The Department claims that it has made a <u>prima</u> <u>facie</u> case for summary judgment because its designated evidence (<u>i.e.,</u> Exhibit 1) includes the proposed assessments for each of the years at issue. (<u>See</u> Reply Br. Supp. Resp't Mot. Summ. J. ("Resp't Reply Br.") at 3 (<u>citing</u> Resp't Br., Ex. 1).) The Department is incorrect.

The Department's Exhibit 1 contains: (1) copies of the 2005 and 2007 proposed AGIT assessments, including interest, and penalties, and (2) a 2008 proposed assessment for a penalty only. (Resp't Br., Ex. 1.) As a result, the Department has made a <u>prima</u> <u>facie</u> showing that there is no genuine issue of material fact as to the validity of the unpaid tax for the 2005 and 2007 tax years, but it has not done so for the 2006 and 2008 tax years.[5] This is not, however, necessarily fatal to the Department's claims for the 2006 and 2008 tax years because the Department has presented other

---

[4] Proposed assessments typically provide a breakdown of the actual tax owed, penalties, interest, and credits due; they do not, however, provide any explanation as to why the tax is owed. (<u>See, e.g.,</u> Resp't Br., Ex. 1.)

[5] Although the Department included certified copies of the missing proposed assessments in another exhibit, it never specifically referred to that exhibit in its written brief. (<u>Compare</u> Resp't Br., Ex. 23 at 3, 5 <u>with</u> Resp't Br. at 1-14.) Thus, the Court declines to incorporate the proposed assessments in that other exhibit into Exhibit 1. <u>See</u> <u>Filip v. Block</u>, 879 N.E.2d 1076, 1081 (Ind. 2008) (stating that when "a party designates both specific lines or text and [a] more general identification of the document containing the specified lines, the court may limit that party to the more specific designation").

designated evidence to support its Motion. (See, e.g., Resp't Mot. Summ. J. at 1-3.) Nonetheless, before the Court evaluates that other evidence to determine whether the Department has made the requisite prima facie showing for the 2006 and 2008 tax years, the Court will determine whether the Elmers' designated evidence shows that there is a genuine issue of material fact with respect to the validity of the unpaid tax for the 2005 and 2007 tax years.

## I. The 2005 and 2007 Tax Years

### A. The Elmer's designated evidence

The Elmers' designation of evidence is contained in their response brief. (See generally Pet'rs' Br.) See also Filip, 879 N.E.2d at 1081 (explaining that a party's designation of evidence may appear in its brief so long as the party clearly identifies the listed materials as designated evidence). The Elmers' designated evidence consists of Mr. Elmer's affidavit, the deposition testimony of a Ms. Brockley, and a portion of the Department's designated evidence (i.e., the Elmers' Protest Letter (Exhibit 2), Mr. Elmer's Deposition Testimony (Exhibit 8), and Mr. Reed's Deposition Testimony and Affidavit (Exhibits 11 and 20)). (See Pet'rs' Br. at 1-6.)

The Department claims that the Court must disregard Ms. Brockley's deposition testimony, the Elmers' Protest Letter (Exhibit 2), and portions of the Elmers' brief (including Mr. Elmer's affidavit) because each is inadmissible. (See Resp't Reply Br. at 3-4.) As an initial matter, therefore, the Court must determine whether it may consider the Elmers' designated evidence. See Miller Pipeline Corp. v. Indiana Dep't of State Revenue, 995 N.E.2d 733, 736 (Ind. Tax Ct. 2013) (stating that the Court will only consider properly designated evidence that would be admissible at trial).

Having reviewed the Elmers' designated evidence, the Court will not consider Ms. Brockley's deposition testimony because the Elmers have not filed any portion of her deposition with the Court. See, e.g., Thomas v. N. Cent. Roofing, 795 N.E.2d 1068, 1071-72 (Ind. Ct. App. 2003) (finding that a trial court erred in granting partial summary judgment to a party that did not actually file its designated evidence with the trial court). In addition, the Court will not consider the Elmers' Protest Letter (Exhibit 2), which was prepared by their attorney, because it is unverified, unsupported by an affidavit, and contains hearsay. (See Resp't Br., Ex. 2.) See also, e.g., Freson v. Combs, 433 N.E.2d 55, 59 (Ind. Ct. App. 1982) (providing that the unsworn commentary of an attorney, briefs, and unsworn statements should not be considered for purposes of summary judgment); Wallace v. Indiana Ins. Co., 428 N.E.2d 1361, 1365 (Ind. Ct. App. 1981) (providing that unverified exhibits that are not supported by affidavits are inadmissible).

Furthermore, the Court must disregard the factual allegations in the Elmers' brief that are not supported by any reference, or citation to, the designated evidence. (See, e.g., Pet'rs' Br. at 10 (claiming that the IRS allowed all of the Elmers' business expense and uncollectible debt deductions for the years at issue).) With respect to the Elmers' designated evidence, therefore, the Court will consider: 1) the legal propositions set forth in the Elmers' brief; 2) the properly designated parts of Mr. Elmer's affidavit;[6] 3) Mr. Elmer's Deposition Testimony (Exhibit 8); and 4) Mr. Reed's Deposition Testimony and Affidavit (Exhibits 11 and 20). See, e.g., Vanco v. Sportsmax, Inc., 448 N.E.2d 1198,

---

[6] While Mr. Elmer's affidavit was not notarized, it contained an affirmation. (See Pet'rs' Resp. Resp't Summ. J. Mot., Aff. Paul Elmer ("Elmer Aff.").) Consequently, the Court can consider his affidavit. See, e.g., State v. Hahn, 660 N.E.2d 606, 608 (Ind. Ct. App. 1996) (finding that a non-notarized affidavit was still an affidavit because an affirmation subjected the affiant to a perjury prosecution in the event her statements were false), trans. denied.

6

1200 (Ind. Ct. App. 1983); Freson, 433 N.E.2d at 59. See also Powell v. Am. Health Fitness Ctr. of Fort Wayne, Inc., 694 N.E.2d 757, 759-60 (Ind. Ct. App. 1998) (stating that "[o]nce evidence has been designated to [a court] by one party, that evidence is deemed designated and the opposing party need not designate the same evidence").

## B. Whether there is a genuine issue of material fact[7]

A corporation's Indiana "adjusted gross income" is the same as its federal "taxable income" (as defined in IRC § 63) with certain statutorily prescribed modifications. IND. CODE § 6-3-1-3.5(b) (2005) (amended 2006). IRC § 63 provides that "taxable income" "means gross income minus the deductions allowed by this chapter (other than the standard deduction)." I.R.C. § 63 (2005). The business expense deduction, an allowable IRC § 63 deduction, permits taxpayers to deduct "the ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business[.]" I.R.C. § 162(a) (2005). To qualify for a business expense deduction, an item must (1) be paid or incurred during the taxable year, (2) be for carrying on any trade or business, (3) be an expense, (4) be an ordinary expense, and (5) be a necessary expense. C.I.R. v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352 (1971).

In its Motion, the Department has claimed that it is entitled to judgment as a matter of law for three alternative reasons. First, the Department claims that it correctly disallowed the Elmers' business expense deductions because the Pharmakon and Hamilton transactions that generated the business expenses lacked economic substance. (See Resp't Br. at 6-12.) Alternatively, the Department claims that the Elmers erred in taking the deductions because the expenses were not ordinary and

---

[7] Because the Elmers took the uncollectible debt deduction in 2008, the Court will address the Department's claim with respect to that deduction when it determines whether the Department made its requisite prima facie showing for the 2006 and 2008 tax years.

necessary business expenses. (See, e.g., Resp't Br. at 9-10.) Finally, the Department contends that the Elmers have not presented sufficient written documentation to substantiate their business expense deductions.[8] (See Resp't Br. at 5-12.)

### 1. Economic substance

The "economic substance doctrine" is a federal common law doctrine that disallows certain tax benefits when a taxpayer's transactions do not have a business purpose or economic substance. I.R.C. § 7701(o)(5)(A) (2015). The determination of whether a taxpayer's transactions lack economic substance for federal tax purposes requires the application of a two-prong test: (1) was the taxpayer motivated by any business purpose other than obtaining a tax benefit (the business purpose test); and (2) did the transactions lack economic substance because no reasonable possibility of a profit existed (the economic substance test). See Rice's Toyota World, Inc. v. C.I.R., 752 F.2d 89, 91 (4th Cir. 1985).

The Department claims that Pharmakon and Hamilton's transactions were shams devoid of all economic substance because: (1) the two S-corporations were closely related given that Mr. Elmer was the sole shareholder and president of both, (2) Mr. Elmer performed the same duties for each and failed to distinguish between either when

---

[8]  The Department also claims that Indiana Code § 6-8.1-3-1(a) allowed it to increase the Elmers' Indiana adjusted gross income by using, among other things, federal common law doctrines to recalculate their federal taxable income through its disallowance of their federal deductions. (See Hr'g Tr. at 6-7.) The Court will presume, without deciding, that the statute conferred that authority to the Department.

working with a third party, Augusta Corporation,[9] and (3) Hamilton had no employees. (See Resp't Br. at 9-12 (citing Resp't Br., Ex. 8 at 51, 57-58, Ex. 11 at 21-22).) The Department further claims that Pharmakon and Hamilton's transactions were shams without economic substance because they were insufficiently documented and largely consisted of nothing more than Mr. Reed and Mr. Elmer's conversations about the pharmaceutical and long-term care industries.[10] (See Resp't Br. at 9-12 (citing Resp't Br., Ex. 11 at 17-19, Ex. 15 at Nos. 1, 12; Ex. 17 at No. 15).)

In response, the Elmers explain that Mr. Elmer had been doing business with Mr. Reed, the sole owner of Augusta and the primary owner of Magnolia Health Systems,[11] since he created Pharmakon in 2003. (See Pet'rs' Br. at 4-5 (citing Elmer's Aff. ¶¶ 2,

---

[9] Augusta provided management/marketing services to Hamilton regarding, for example, the operations of institutional pharmacies, Medicare Part D reimbursements, and the potential effects of newly enacted legislation. (See Pet'rs' Br. at 5 (citing Resp't Br., Ex. 20 ¶ 3).) Augusta also provided a variety of respiratory services to long-term care facilities on behalf of Hamilton. (See Pet'rs' Br. at 1-2, 5 (citing Resp't Br., Ex. 8 at 62-70, Ex. 20 ¶ 3).)

[10] The Department has also argued that several other factors showed that Pharmakon and Hamilton's transactions lacked economic substance. (See Resp't Br. at 2-12 (citing Resp't Br., Ex. 2 (the Elmers' Protest Letter), Ex. 4 (a Memo), Ex. 5 (the Elmers' Audit Summary), Ex. 7 (Hamilton's Audit Summary), Ex. 9 (Pharmakon's Audit Summary), Ex. 12 (E-mails), Ex. 18 (an IRS Letter), Ex. 19 (Invoices), and Exs. 21-22 (Vehicle Logs)).) The Court, however, will not consider those arguments because the designated evidence upon which the Department has relied is inadmissible for one or more of the following reasons: it is unauthenticated, it is unverified, it contains hearsay, or it is not supported by an affidavit. See, e.g., Miller Pipeline, 995 N.E.2d at 736 (stating the Court will only consider properly designated evidence that would be admissible at trial); Pavlovich v. State, 6 N.E.3d 969, 975-80 (Ind. Ct. App. 2014) (requiring the authentication of e-mail messages), trans. denied; Lee v. Schroeder, 529 N.E.2d 349, 352 (Ind. Ct. App. 1988) (stating that a court may disregard an affidavit on its own motion when it does not meet the requirements of Trial Rule 56(E)), trans. denied; Wilson v. Jenga Corp., 490 N.E.2d 375, 376-77 (Ind. Ct. App. 1986) (indicating that invoices are hearsay and a foundation must be laid for their admittance); Wallace v. Indiana Ins. Co., 428 N.E.2d 1361, 1365 (Ind. Ct. App. 1981) (providing that unverified exhibits that are not supported by affidavits are inadmissible); Ind. Evidence Rule 803(8)(B)(ii) (regarding the admissibility of "investigative reports prepared by or for a public office, when offered by it in a case in which it is a party").

[11] Magnolia Health Systems, a manager of long-term care facilities, was owned by Mr. Reed and his brother. (See Resp't Br. at 3 (citing Resp't Br., Ex 11 at 8).) Pharmakon provided medications to Magnolia's facilities. (See Pet'rs' Br. at 2, 4 (citing Elmer's Aff. ¶ 4; Resp't Br., Ex. 8 at 10-11).)

4).)  In turn, Mr. Elmer explained that he created Hamilton in 2004 because he wanted to expand his pharmaceutical business and use a different business entity to create new business relationships with, and provide innovative services to, Pharmakon's competitors.  (See Pet'rs' Br. at 2, 4-6 (citing Resp't Br., Ex. 8 at 57-59, Ex. 11 at 17-18, 21; Elmer's Aff. ¶¶ 3, 7).)  Mr. Elmer also explained that he and Mr. Reed have never co-owned any businesses or recorded any of their business arrangements in writing.  (See Pet'rs' Br. at 3-7 (citing Elmer's Aff. ¶¶ 5-6, 8).)  In fact, Mr. Elmer averred that it was customary to have oral agreements in his industry, explaining that when a local hospital requested that Pharmakon provide it with medications, the medications were immediately provided without a written contract.  (See Pet'rs' Br. at 5 (citing Resp't Br., Ex. 8 at 29-30).)

"The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted."  Gregory v. Helvering, 293 U.S. 465, 469 (1935) (citations omitted).  As a result, "'a taxpayer may adopt any form he desires for the conduct of his business, and . . . the chosen form cannot be ignored merely because it results in a tax saving.'"  N. Ind. Pub. Serv. Co. v. C.I.R., 115 F.3d 506, 511 (7th Cir. 1997) (citation omitted).  Nonetheless, courts may disallow statutorily conferred tax advantages when the facts indicate that a business was not formed for substantial business purposes or that it does not engage in substantial business activity.  See id.  Whether a transaction is a sham for purposes of the economic substance doctrine, therefore, is an issue of fact.  See, e.g., Rice's Toyota, 752 F.2d at 92.

Here, the Department's designated evidence indicates that Pharmakon and

10

Hamilton's transactions may have lacked economic substance. In contrast, the Elmers' designated evidence indicates that Mr. Elmer was guided by valid business purposes when he created Hamilton and when he conducted Pharmakon and Hamilton's transactions. Accordingly, the Court having construed all properly asserted facts and the reasonable inferences drawn therefrom in favor of the Elmers, finds that there is a genuine issue of material fact as to whether Pharmakon and Hamilton's transactions lacked economic substance. See Scott Oil Co. v. Indiana Dep't of State Revenue, 584 N.E.2d 1127, 1128-29 (Ind. Tax Ct. 1992). Thus, neither the Department nor the Elmers are entitled to summary judgment on this basis.

### 2. Ordinary and Necessary Business Expenses

"An 'ordinary' expense is one that is 'normal, usual, or customary in the type of business involved.'" Curcio v. C.I.R., 689 F.3d 217, 223 (2d. Cir. 2012) (citations omitted). An expense, however, need not be habitual to be "ordinary;" instead, "the transaction 'must be of common or frequent occurrence in the type of business involved[.]'" Id. (citation omitted). A "necessary" expense, in turn, "is one that is 'appropriate and helpful' for the development of the taxpayer's business." Id. (citations omitted).

The Department claims that the Elmers improperly took business expense deductions under IRC § 162 because the expenses cannot be characterized as the ordinary and necessary business expenses of either Pharmakon or Hamilton. (See, e.g., Resp't Br. at 9-10.) As acknowledged by the Department, for federal tax purposes "[t]he determination of whether an expense is 'ordinary' and 'necessary' is primarily a factual one based upon the substance of the underlying transaction." (Resp't Br. at 7

11

(citing C.I.R. v. Heininger, 320 U.S. 467, 470 (1943)).) As just explained, the Elmers' designated evidence indicates that Hamilton was formed for valid business purposes and that the conversations between Mr. Elmer and Mr. Reed were related to, and may have benefited, Pharmakon and Hamilton's businesses. Furthermore, the Elmers' designated evidence shows that Pharmakon and Hamilton's transactions were conducted at arm's-length rates. (See Pet'rs' Br. at 10-13 (citing Resp't Br., Ex. 20 ¶¶ 3, 7).) Nevertheless, the Department's designated evidence establishes that Mr. Elmer and Mr. Reed simply could not recall the specific details of those transactions. (See, e.g., Resp't Br. at 9-10 (citing Resp't Br., Ex. 8 at 34, 49-50 (where Mr. Elmer states that he could not recall whether he required employees to complete vehicle travel logs or kept his own contemporaneous vehicle usage records), Ex. 11 at 21-22 (where Mr. Reed states that he could not recall the details of the agreement regarding Hamilton's payment of management/marketing fees to Augusta)).) When questions regarding the credibility of witnesses or the weight of testimony arise, as is the case here, summary judgment should be denied. See Mayhew v. Deister, 244 N.E.2d 448, 452 (Ind. Ct. App. 1969), trans. denied. Accordingly, the Court finds that neither party is entitled to summary judgment on this basis because there is a genuine issue of material fact as to whether the expenses that the Elmers deducted can be characterized as the ordinary and necessary business expenses of either Pharmakon or Hamilton.

### 3. Substantiating Documentation

IRC § 6001 provides that "[e]very person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from

12

time to time prescribe." I.R.C. § 6001 (2005). In addition, IRC § 274, in relevant part, states that no deduction for traveling expenses under IRC § 162 shall be allowed

> unless [a] taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of the persons entertained, using the facility or property, or receiving the gift.

I.R.C. § 274(d) (2005). The Department has claimed that these authorities establish that it is entitled to judgment as a matter of law because the Elmers have not offered sufficient written documentation to substantiate their business expense deductions.[12] (See Resp't Br. at 5-12.) The Court, however, must disagree.

A taxpayer's failure to produce corroborating written documentation at the federal level may entitle a federal taxing official to summary judgment. See, e.g., In re Settles, 452 B.R. 637, 660 (Bankr. E.D. Tenn. 2011) (providing that a debtor's promise that evidence substantiating his claimed business expense deductions would be produced at trial was insufficient to preclude entry of summary judgment in favor of a taxing official on the issue of whether the debtor was entitled to the deductions). The same does not hold true for purposes of Indiana law. Indeed, the Indiana Supreme

---

[12] The Department also claims that the Court should grant its Motion because Indiana's case law and Indiana Code § 6-8.1-5-4 require a taxpayer to substantiate its federal deductions and Indiana tax liability with written documentation. (See Resp't Br. at 7-8 (citing Lafayette Square Amoco, Inc. v. Indiana Dep't of State Revenue, 867 N.E.2d 289, 292-93 (Ind. Tax Ct. 2007); IND. CODE § 6-8.1-5-4(a) (2005)).) Neither of these authorities, however, stands for the proposition that the Department claims. Indeed, the Court arrived at its holding in Lafayette Square Amoco post trial, not after a party moved for summary judgment. See Lafayette Square Amoco, 867 N.E.2d at 290. In turn, Indiana Code § 6-8.1-5-4 merely requires a taxpayer to maintain certain records to enable the Department to determine its actual tax liability, and when the taxpayer fails to do so, the Department may determine the taxpayer's tax liability based on the best information available to the Department. See I.C. § 6-8.1-5-4(a); IND. CODE § 6-8.1-5-1(b) (2005) (amended 2006); see also, e.g., Keller Oil Co. v. Indiana Dep't of State Revenue, 512 N.E.2d 501, 504 (Ind. Tax Ct. 1987).

Court has explained that Indiana's summary judgment procedure differs from that employed at the federal level because Indiana does not adhere to the federal methodology:

> The burden imposed at trial upon the party with the burden of proof on an issue is significantly different from that required of a non-movant in an Indiana summary judgment proceeding. Under Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence . . . . Under the federal rule, [however,] the party seeking summary judgment is not required to negate an opponent's claim. [Instead, t]he movant need only inform the court of the basis of the motion and identify relevant portions of the record "which it believes demonstrate the absence of genuine issue of material fact." The burden then rests upon the non-moving party to make a showing sufficient to establish the existence of each challenged element upon which the non-movant has the burden of proof.

Jarboe v. Landmark Cmty. Newspapers of Ind., Inc., 644 N.E.2d 118, 123 (Ind. 1994) (citations omitted). The case of Lenhardt Tool & Die Company, Inc. v. Lumpe, 703 N.E.2d 1079 (Ind. Ct. App. 1998), trans. denied exemplifies the lessons of Jarboe in practice and is of particular relevance here.

In Lenhardt, the plaintiff filed a complaint for negligence and strict liability against the defendant, a manufacturer of molds. Lenhardt Tool & Die Co. v. Lumpe, 703 N.E.2d 1079, 1081 (Ind. Ct. App. 1998), trans. denied. The defendant, after unsuccessfully moving for summary judgment, claimed that the trial court had erred in denying its motion because the plaintiff's designated evidence did not prove that the defendant had manufactured the molds that caused the plaintiff's injuries. Id. In resolving the defendant's appeal, the Indiana Court of Appeals explained that it must determine whether "a defendant [may] succeed in a motion for summary judgment by showing the

14

plaintiff lacks sufficient proof to establish an essential element of the plaintiff's claim on which the plaintiff bears the burden of proof." Id. The Court of Appeals explained that the trial court had not erred given the defendant's failure to designate sufficient evidence in support of its motion and the Indiana Supreme Court's decision in Jarboe:

> It is clear that under the Jarboe analysis, [the defendant] would have had to designate some evidence that the mold was not manufactured by [the defendant] in order to require [the plaintiff] to come forward with evidence that the mold was manufactured by [the defendant]. Simply demonstrating that [the plaintiff] does not have sufficient evidence to prove the mold was manufactured by [the plaintiff] is not enough.

See id. at 1083. The Court of Appeals acknowledged that in some instances, a plaintiff may not produce better evidence at trial and, as a result, a defendant would be granted a motion for judgment on the evidence because the plaintiff would have failed to prove an essential element of its case. Id. Nevertheless, the Court of Appeals determined that Jarboe compelled it to affirm the trial court given that "summary judgment terminates the right to trial and that summary judgment [may] be denied even though it appears that [a] plaintiff may not succeed at trial." Id. at 1084 (citation omitted).

The Elmers, like the plaintiff in Lenhardt, have the burden of proving that the Department's proposed assessments are incorrect. See RAC II, 963 N.E.2d at 466; IND. CODE § 6-8.1-5-1(c) (2005) (amended 2006). In moving for summary judgment, the Department designated evidence to show that there is no genuine issue of material fact as to whether the Elmers erred in taking business expense deductions for the 2005 and 2007 tax years. In addition, the Department claimed that, like the defendant in Lenhardt, the Elmers have not designated written documentation that substantiates their business expense deductions and, therefore, the Department is entitled to an entry of

15

summary judgment. In response, the Elmers designated evidence that ultimately established that there is indeed a genuine issue of material fact as to whether their 2005 and 2007 business expense deductions were proper. At that point, the Department's remaining claim that the Elmers' business expense deductions were improper because the Elmers failed to provide substantiating written documentation was insufficient to entitle it to an entry of summary judgment. See Lenhardt, 703 N.E.2d at 1083-84. Accordingly, the Elmers, similar to the plaintiff in Lenhardt, did not need to designate written documentation that substantiated their 2005 and 2007 business expense deductions to defeat the Department's Motion. Accordingly, the Department has not shown that it is entitled to summary judgment for the 2005 and 2007 tax years on the basis that the Elmers failed to designate written documentation that substantiated their 2005 and 2007 business expense deductions.

## II. The 2006 and 2008 Tax Years

As previously explained, the Court must determine whether the Department has made a prima facie showing that there is no genuine issue of material fact as to the validity of the unpaid tax for the 2006 and 2008 tax years because it failed to properly designate the 2006 and 2008 proposed AGIT assessments as evidence. See supra pp. 4-5. For the below-stated reasons, the Court finds that the Department has not made the requisite prima facie showing with respect to the uncollectible debt deduction or the Elmers' other 2006 and 2008 business expense deductions.

The uncollectible or bad debt deduction is another permissible IRC § 63 deduction that allows a taxpayer to deduct either in whole or in part "any debt which becomes worthless within [a] taxable year." See I.R.C. § 166(a)-(b) (2005). The

Department claims that the Elmers erred in taking an uncollectible debt deduction because the debtor, Magnolia, continued to make payments on the purportedly worthless debt and the Elmers have not produced written documentation to substantiate what portion, if any, of the debt was worthless. (See Resp't Br. at 13-14.)

The Department has designated the following admissible evidence to support its claim: the LOF (Exhibit 3), Mr. Elmer's Deposition Testimony (Exhibit 8), Mr. Reed's Deposition Testimony (Exhibit 11), the First and Second Responses to the Department's Request for Production of Documents (Exhibits 13 and 15), and the Responses to the Department's Second Set of Interrogatories (Exhibit 14).[13] (See Resp't Br. at 3, 13-14 (citing Resp't Br., Ex. 3 at 11, Ex. 8 at 21, 69, Ex. 11 at 8, 13-15, Ex. 13 at No. 17, Ex. 14 at Nos. 18-19, and Ex. 15 at No. 8).) This evidence establishes the following:

> During the administrative protest phase, the Elmers explained that they took an uncollectible debt deduction on their 2008 amended return because the period in which Pharmakon could receive insurance reimbursements had expired. Mr. Elmer and Mr. Reed subsequently explained that some of Mr. Reed's long-term care facilities, including Magnolia, did not always have the means to pay Pharmakon for the services it had rendered in a timely fashion. As a result, Mr. Elmer and Mr. Reed had occasional meetings during which they discussed "the unpaid accounts receivable that Magnolia owed Pharmakon." Mr. Elmer and Mr. Reed orally agreed that Pharmakon would take "write downs on stuff" and that Magnolia would make payments to Pharmakon at certain intervals, but "th[o]se time frames would move depending on the stability of the [parties'] relationship[.]" While Mr. Elmer agreed that he created an oral contract with Mr. Reed for repayment of the outstanding debts, he could not recall either when the contracts were formed or what the precise terms of the agreement was, and he conceded that he could not locate a purportedly relevant memo

---

[13] The Department has also designated the Elmers' Protest Letter (Exhibit 2), a Memo (Exhibit 4), Pharmakon's Audit Summary (Exhibit 9), and certain E-mails (Exhibit 12) to supports its claim. (See Resp't Br. at 3, 13-14.) As previously explained, however, those exhibits are inadmissible and the Court will therefore not consider them. See supra note 10.

regarding their agreement.

(See Resp't Br. at 3, 13-14 (citing Resp't Br., Ex. 3 at 11, Ex. 8 at 21, Ex. 11 at 13-15, Ex. 13 at No. 17, Ex. 14 at Nos. 18-19, Ex. 15 at No. 8).) The Department's designated evidence, therefore, simply provides cursory facts regarding the Elmers' 2008 uncollectible debt deduction. As a result, the Court finds that the Department has not made its requisite prima facie showing as to the propriety of the Elmers' 2008 uncollectible debt deduction.

The Court similarly finds that the Department did not make its prima facie showing as to the propriety of the Elmers' other 2006 and 2008 business expense deductions for three main reasons. First, the Court cannot consider the majority of the material facts that support the Department's claims for those years because the facts are derived from exhibits that are unverified, unsupported by affidavits, unauthenticated, or contain hearsay. (Compare Hr'g Tr. at 8-16 (identifying the material facts) with supra note 10 (the Department's inadmissible exhibits).) Second, the Department's rationale for disallowing the Elmers' 2006 and 2008 business expense deductions is the same as that presented for the 2005 and 2007 deductions, (see, e.g., Resp't Br. at 2-5; H'rg Tr. at 7-16), and the Court has already determined that there are genuine issues of material fact with respect to the 2005 and 2007 tax years. Finally, the Department's renditions of the admissible material facts are often inconsistent with those in the designated evidence. For instance, the Department states that Mr. Reed "did not know what Augusta's business purpose was[.]" (Resp't Br. at 4 (citing Resp't Br., Ex. 11 at 9-11).) The designated evidence, however, indicates that Mr. Reed explained that Augusta provided management and consulting services and held real estate. (See Resp't Br.,

18

Ex. 11 at 9-10.)  Accordingly, the Court finds that the Department has not shown that it is entitled to summary judgment as a matter of law for the 2006 and 2008 tax years either.

## CONCLUSION

In this case, the parties' designated evidence invites the Court to resolve factual disputes and conflicting inferences, assess the credibility of witnesses, and determine where the preponderance of the parties' designated evidence lies.  This, however, is improper because the summary judgment procedure is not a substitute for trial, a means for resolving factual disputes or conflicting inferences that arise from undisputed facts, or a tool for deciding where the preponderance of the evidence lies before the evidence has been fully presented.  See Owens Corning Fiberglass Corp. v. Cobb, 754 N.E.2d 905, 909 (Ind. 2001); Egnatz v. Med. Protective Co., 581 N.E.2d 438, 439-40 (Ind. Ct. App. 1991).  The Court, finding that there are genuine issues of material fact as to whether the Department, in determining the Elmers' Indiana AGIT liability, erred in disallowing the Elmers' business expense and uncollectible debt deductions for the years at issue, DENIES the Department's Motion.  The Court will order the parties to file a joint status report under separate cover.

SO ORDERED this 1st day of September 2015.

_____
Thomas G. Fisher, Senior Judge
Indiana Tax Court

DISTRIBUTION:
David F. McNamar, F. Pen Cosby, James K. Gilday, John P. Lowrey